# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

ROBERT L. ADGER, et al., :
for themselves and all others similarly situated, :
:
        Plaintiffs, :
:
v. : C.A. No. 18-2048-LPS
:
GOVERNOR JOHN CARNEY, et al., :
:
        Defendants. :

Stephen A. Hampton, GRADY & HAMPTON, LLC, Dover, DE
James J. Woods, Jr., GRADY & HAMPTON, LLC, Encinitas, CA

    Attorneys for Plaintiffs

C. Malcolm Cochran, IV, Chad M. Shandler, and Katharine L. Mowery, RICHARDS, LAYTON & FINGER P.A., Wilmington, DE

    Attorneys for Defendant Governor John C. Carney

Robert B. Young, REGER, RIZZO & DARNALL, LLP, Dover, DE

    Attorney for Defendants Major Jeffrey Carrothers, c/o Abigail West, and c/o/ Aaron Forkum

James D. Taylor, Jr., SAUL EWING ARNSTEIN & LEHR LLP, Wilmington, DE
Amy L. Piccola, SAUL EWING ARNSTEIN & LEHR LLP, Philadelphia, PA

    Attorneys for Delaware Department of Correction Defendants

## **MEMORANDUM OPINION**

March 26, 2020
Wilmington, Delaware



**STARK, U.S. District Judge:**

I.     **INTRODUCTION**

Following the February 2017 prison riot at the James T. Vaughan Correctional Center ("Vaughn"), 113 inmates ("Plaintiffs") filed a complaint against 51 individuals ("Defendants") for injuries suffered allegedly as a result of the Vaughn riot. (D.I. 1-1) Plaintiffs filed the now-operative Amended Complaint on February 4, 2019. (D.I. 6) ("Complaint" or "Compl.") The Complaint is over 90 pages long and asserts claims for relief under: (I) 24 U.S.C. § 1983 for Cruel and Unusual Punishment; (II) 42 U.S.C. § 1983 for Conspiracy; (III) Violation of the Prison Rape Elimination Act, 42 U.S.C. § 15607; (IV) Intentional or Reckless Infliction of Emotional Distress; and (V) Failure to Properly Train, Monitor, Supervise, or Discipline. (*Id.* at ¶¶ 77-93) Three motions to dismiss have been filed by various defendants: Governor John Carney ("Governor Carney" or "Carney") (D.I. 21); Defendants Carrothers, C/O Abigail West, and C/O Aaron Forkum ("Carrothers," "West," and "Forkum" and, collectively, "CWF Defendants") (D.I. 18); and the remaining Delaware Department of Correction ("DOC") defendants ("DOC Defendants") (D.I. 19).

The Court has considered the briefing on all three motions (D.I. 22, 27, 31; D.I. 18, 26, 32; D.I. 20, 28, 30), as well as the extensive Complaint and exhibits. Having done so, the Court will grant all three motions to dismiss: ***with prejudice*** as to claims against Governor Carney and ***without prejudice*** (except as otherwise noted) as to claims against the DOC Defendants and the CWF Defendants. Plaintiffs will be given one final opportunity to amend their complaint against the remaining Defendants.

## II. BACKGROUND[1]

In their Complaint, Plaintiffs allege that their injuries stem from the events surrounding February 1, 2017, when Vaughn inmates seized control of one building in the facility, took hostages, and ultimately took the life of a correctional officer. (Compl. at ¶ 4) This uprising, Plaintiffs contend, resulted from prisoner frustration with continued "abuse, the increasingly unavailable healthcare, and the increasing scarcity of education, rehabilitation, and recreation options for inmates." (*Id.* at ¶¶ 4, 7-8) Plaintiffs allege that Delaware officials ignored complaints of unliveable conditions and abuse by referring the complaints to DOC, which then allowed these grievances to go unaddressed. (*Id.* at ¶¶ 5-6) Plaintiffs further allege that the revolt could have been ended earlier if DOC and State officials had acted sooner. (*Id.* at ¶ 13) Specifically, "Warden Pierce had assembled a team from [Vaughn] that was prepared to retake C building not long after the revolt started;" the team was armed with pepper spray, which Plaintiffs allege would have been sufficient to retake the prison. (*Id.* at ¶ 15)

Instead, Warden Robert May's plan was instituted the next day. (*Id.*) Plaintiffs allege that the directing officials "knew that the correctional and police officers retaking the building were going to brutalize the inmates." (*Id.*) Once the riot started, according to Plaintiffs, the majority of inmates were terrified of the revolting inmates and were cooperative with authorities. (*Id.* at ¶ 16) Despite this cooperation, Plaintiffs allege that the DOC Correctional Emergency Response Team ("CERT"), dressed in face-covering balaclavas and non-identifying riot gear,

---

[1] The Court's recitation of the background facts is based on taking the Complaint's well-pleaded factual allegations as true, which the Court is obligated to do at this stage of the proceedings. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) ("A motion to dismiss pursuant to Rule 12(b)(6) may be granted only if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.").

2

"jumped on the inmates' backs, put extremely tight zip-ties on their wrists, and kicked, stomped, stood on, and spit on them." (*Id.* at ¶ 19)  Plaintiffs continue that CERT "abused the restrained, passive inmates with batons, pepper spray, and electrified riot shields while threatening to kill them if they resisted." (*Id.*)  Later, between 6:30 and 7:30 a.m., CERT allowed the inmates to be examined by nurses for 20-30 seconds, but prevented proper treatment. (*Id.* at ¶ 20)  The inmates were shepherded around wearing little in the way of clothing and bound by too-tight restraints. (*Id.* at ¶ 20-21)  Lieutenant Satterfield ordered looser restraints by about 12:15 p.m. (*Id.* at ¶ 20)

Plaintiffs describe in detail certain alleged abuses:

> They also forced the inmates to disrobe in groups and spread their buttocks with their hands, and then put those soiled fingers into their own mouths and pull their mouths open further.  Some officers touched multiple inmates' genitals, buttocks, and mouths while wearing the same gloves.  This abuse was often done with female officers present.

(*Id.* at ¶ 22)  Plaintiffs further allege that inmates were "beaten, threatened, mocked and abused" in a variety of ways. (*Id.* at ¶ 24)  Plaintiffs allege excessive force was used, in violation of DOC policy 8.30 and of strip search rules under policy 8.32. (*Id.* at ¶ 26)

CERT members failed to write reports on any of the occurrences. (*Id.* at ¶ 27)  After the revolt was over, Plaintiffs allege that the inmates were denied necessities like toiletries, clothing, adequate food, and medical/mental care. (*Id.* at ¶ 28)

In support of their claims, Plaintiffs provide a series of anonymous-sourced descriptions of abuse. (*See id.* at ¶ 30)  Plaintiffs also allege that DOC intentionally allowed its agents to dispose of inmates' personal property like clothes, toiletries, shoes, medicine, electronics, etc. (*Id.* at ¶ 32)

Plaintiffs additionally allege that after February 2, DOC CERT and C/Os (correctional officers) began instituting shakedowns of inmates, entering cells in large numbers with masks and riot gear, destroying and messing up the cell, torturing occupants, and taking "contraband." (*Id.* at ¶¶ 33-34) The Complaint provides a list of inmates affected by various such activities, with anonymous quotes associated with each grouping. (*See id.* at ¶¶ 36-41)

One of Plaintiffs' attorneys, Stephen Hampton, sent a letter to Governor Carney on March 20, 2017, asking that he end the alleged abuse. (*Id.* at ¶ 42) The Office of the Governor responded that it would refer complaints to DOC. (*Id.* at ¶ 43) The alleged torture and shakedowns continued. (*See id.* at ¶¶ 45-46, 56-57) (describing shakedowns used to intimidate potential witnesses, involving inappropriate x-ray searches, K-9 dogs, and strip searches)[2] Plaintiffs allege that inmates are continuing to suffer (and in some instances have died) as a result of this mistreatment. (*See id.* at ¶ 61)

Plaintiffs describe a preliminary report of security at Vaughn, commissioned by Governor Carney in the aftermath of the riot, which allegedly described "[i]nconsistencies between the way different C/Os interpreted the rules, and the fear of retaliation if they complained (for C/Os and inmates)." (*Id.* at ¶ 9) As a result of this preliminary report, Governor Carney instituted a plan to increase Vaughn's funding by $11.5 million and to hire more correctional officers. (*Id.* at ¶ 10) But this reform, Plaintiffs claim, was insufficient to address the prisoners' many concerns. (*See id.* at ¶ 12)

---

[2] Plaintiffs describe a specific instance of injury suffered on August 15, 2018 by Dwayne Cropper (*see* Compl. at ¶ 55), who is not a Plaintiff in this case. Cropper is the Plaintiff in an unrelated case filed in this Court. *See Cropper v. Danberg*, C.A. No. 12-969-LPS (D. Del. 2012).

Plaintiffs allege that insufficient investigation or corrective action has occurred in the period following the revolt, and abuses have only continued. (*Id.* at ¶ 49) Plaintiffs allege that medical care is inadequate and getting worse, and grievance systems do not provide relief. (*Id.* at ¶¶ 51-52) Plaintiffs also contend that the prison bureaucracy and leadership misinterprets sentences and does not maintain adequate records. (*Id.* at ¶ 64)

## III. LEGAL STANDARDS

### A. Motion to Dismiss for Failure to State a Claim

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

The Court is not obligated to accept as true "bald assertions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and unwarranted inferences," *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false," *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996).

B.    **Section 1983**

In an action under 42 U.S.C. § 1983 ("Section 1983 or "§ 1983"), the plaintiff must prove two essential elements to prevail: (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived the plaintiff of a federally secured right. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993). Section 1983 is not a source of substantive rights. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002). Rather, it is a means to redress violations of federal law by state actors. *Id.*; *see also Holocheck v. Luzerne County Head Start, Inc.*, 385 F.Supp.2d 491, 498-99 (M.D. Pa. 2005).

There is no respondeat superior liability under § 1983. *See Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989). A defendant in a civil rights action "cannot be held responsible for a constitutional violation which he . . . neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007); *see also Polk County v. Dodson*, 454 U.S. 312, 325 (1981). Such involvement may be "shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005); *see also Rode v. Dellaciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

### C. Eighth Amendment

#### 1. Condition of Confinement

A condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or if it deprives an inmate of a minimal civilized measure of the necessities of life. *See Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). In the context of a condition of confinement claim, the inmate must show: (1) the alleged deprivation is, objectively, sufficiently serious; and (2) the prison official was deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference" is a subjective standard, requiring the official to have known of a "substantial risk of serious harm" and to have disregarded the risk by "failing to take reasonable measures to abate it." *Id.*

#### 2. Use of Force

In order for a prisoner to state an Eighth Amendment claim for the excessive use of force by a prison official, he must establish that the force was not applied in a good-faith effort to maintain or restore discipline, but that it was maliciously and sadistically used to cause harm.

7

*See Hudson*, 503 U.S. at 7. The absence of a serious injury to the inmate is relevant to the Court's inquiry, but does not end it. *See id.* However, "[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimus* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

A prisoner's challenge to a strip search may be cognizable under 42 U.S.C. § 1983 through the Fourth or Eighth Amendments. *See Williamson v. Garman*, 2017 WL 2702539, at *4 (M.D. Pa. June 22, 2017) (citing *Bell v. Wolfish*, 441 U.S. 520, 558-60 (1979)). Where a prisoner alleges that a strip search was conducted in a physically abusive manner, the Eighth Amendment applies. *See Jordan v. Cicchi*, 428 F. App'x 195, 199-200 (3d Cir. 2011) (explaining that excessive force claim arising from strip search may proceed under either Fourth or Eighth Amendment, but latter is "the primary source of protection after an individual's conviction"); *Robinson v. Ricci*, 2012 WL 1067909, at *17 n.6 (D.N.J. Mar. 29, 2012) (stating that, in addition to possible Fourth Amendment violation, the "Eighth Amendment may be implicated where the strip search or visual body cavity search was conducted in a brutish and unreasonable manner").

### D. Eleventh Amendment

The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the kind of relief sought. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "Absent a state's consent, the Eleventh Amendment bars a civil rights suit in federal court that names the state as a defendant." *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978)).

### E. Prison Rape Elimination Act

The Prison Rape Elimination Act ("PREA") does not provide a private right of action and, therefore, Plaintiffs are prohibited from asserting a claim pursuant to PREA. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 283-85 (2002); *Bowens v. Employees of the Dep't of Corr.*, 2015 WL 803101, at *1 n.1 (E.D. Pa. Feb. 26, 2015); *Washington v. Folino*, 2013 WL 998013, at *4 (W.D. Pa. Feb. 28, 2013) (violations of PREA do not create private cause of action); *see also Henry v. CO #2 Gilara*, 2017 WL 3424863, at *3 (W.D. Pa. Aug. 9, 2017); *Njos v. United States*, 2016 WL 1720816 (M.D. Pa. Apr. 29, 2016).

## IV. DISCUSSION

### A. Defendant Carney's Motion to Dismiss

Governor Carney argues that Plaintiffs' Complaint fails to describe any personal involvement by him, that respondeat superior liability is not permitted, that claims of his supervisory liability are conclusory, and that he is entitled to qualified immunity. (D.I. 22 at 1) The Court will dismiss the Complaint against Governor Carney, and dismiss him as a Defendant, because Plaintiffs have failed to allege, plausibly and adequately, any personal involvement or supervisory responsibility for the pleaded injury. The Court need not reach the additional bases on which he moves to dismiss.

Counts I, II, and III, which are the only counts that appear to include Governor Carney (*see* D.I. 22 at 11-12), will all be dismissed as to him. As Governor Carney observes, under Delaware law it is the Commissioner of Correction who has "full and active charge" of the Department's facilities and services, and who is required to "provide for" the "treatment" of persons committed to DOC, reducing (if not eliminating) the opportunities for the Governor to have been personally involved in the alleged conduct. (*See* D.I. 22 at 1) (quoting 11 Del. C.

9

§§ 6516, 6517) Additionally, the Court takes judicial notice that Governor Carney took office only 14 days prior to the February 1, 2017 uprising.[3]

Plaintiffs do not allege any actions by Defendant Carney showing personal direction or actual knowledge and acquiescence, through actions or policies he set in place. Even assuming that knowledge and acquiescence could be a basis for liability under § 1983, *see generally Williams v. Papi*, 714 F. App'x 128, 133 (3d Cir. 2017) (noting that *Iqbal* "arguably narrowed the ability to find a supervisor liable for conduct of which he was merely aware but did not direct"), the March 20 Hampton Letter complaining of prison abuse and sent to the Governor's Office (and assuming it reached the Governor) is insufficient to meet the requirements for such liability. (*See* D.I. 22 at 16) ("That letter was no more than a lawyer's pre-litigation statement of allegations, none of which had been (or has been) established as true.") Further, the Governor's Office appropriately referred the letter to DOC for further investigation.

Moreover, Governor Carney took actions demonstrating the opposite of deliberate indifference, as summarized in his brief: "twelve days after the uprising at [Vaughn] the Governor established an Independent Review Team, charged with reviewing the events surrounding the hostage incident and related security issues at [Vaughn] and the findings from the investigations then being conducted by the Delaware State Police and the Department." (D.I. 22 at 18) (internal quotation marks omitted) The preliminary report of this Team identified key issues, established a search for a new warden, and examined inmate complaints. The investigation later resulted in, among other things, the Final Report (which is integral to Plaintiffs' case). (*See* D.I. 26 at 10 & n.1)

---

[3] *See* Fed. R. Evid. 201; *see also* D.I. 22 at 2 & n.1; D.I. 27 at 12.

10

Accordingly, Governor Carney's motion to dismiss will be granted and he will be dismissed as a Defendant.

### B. DOC Defendants' Motion to Dismiss

The DOC Defendants are 47 employees of the Department of Corrections. They summarize their argument as follows:

> To be certain, the . . . Complaint alleges acts that, if true, would be reprehensible; what it does not do, however, is identify which Plaintiff was allegedly involved in, and harmed by, those acts, or which Defendant was the alleged actor. . . . The DOC Defendants are thus left asking, "what exactly am I alleged to have done and to whom?"

(D.I. 20 at 3-4) The Court agrees. Plaintiffs have a responsibility in drafting a Complaint to put individual defendants on notice of their alleged misconduct, and on notice of which Plaintiff alleges injury as a result of that misconduct.

As examples of the pleadings' deficiencies, the DOC Defendants point out:

- Two of the DOC Defendants are not even named anywhere except in the caption.

- Twenty-one of the 51 Defendants are named only in Paragraph 71, which lists nearly every Defendant and makes the conclusory allegation that they all "have been involved personally, or been aware of and ratified the torture and abuse of inmates . . . ."

- The Complaint only specifically describes injuries to three identified individuals, none of whom is a Plaintiff in this case. Compl. ¶¶ 55, 60, 61.

- The Amended Complaint only names seven of the 51 Defendants in connection with incidents of physical violence, and in none of these instances does it specify which Plaintiff was injured or the extent of the injuries. Compl. ¶¶ 30(h), 30(t), 38(a), 38(b), 40(e).

11

(D.I. 20 at 4) The DOC Defendants, like the Court, are left unaware of who exactly is being accused of what conduct.[4]

Plaintiffs respond that they "have identified all defendants they can and specified the illegal acts of each to the best of their ability." (D.I. 28 at 8) They describe how the balaclava-wearing perpetrators were unidentifiable, how inmates were ordered to lay face down, and how CERT used pepper spray, all of which conspired to prevent identification. (*See id.*) (citing *Alston v. Parker*, 363 F.3d 229, 233 n.6 (3d Cir. 2004)) ("The need for discovery before testing a complaint for factual sufficiency is particularly acute for civil rights plaintiffs, who often face informational disadvantages.")) Plaintiffs are not expected to identify the unidentifiable, but they are expected to identify which plaintiffs are the victims of each alleged act of misconduct, and to provide a plausible basis for believing that the balaclava-wearing perpetrators are among the named the Defendants. Plaintiffs have not made allegations rendering it plausible to believe that all 51 Defendants were masked during the events on, around, and even after February 2. As the DOC Defendants observe: "Nor do Plaintiffs allege, with respect to events that are alleged to have occurred well after the early days of February 2017, that in all cases they were unable to determine the name of the alleged wrongdoer." (D.I. 20 at 14)

The Court agrees with the DOC Defendants that the Complaint is essentially a "shotgun pleading" and does not comply with Federal Rule of Civil Procedure Rule 8's requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief." (*See, e.g.*, D.I. 20 at 11-15) As courts throughout the Third Circuit have recognized, "a shotgun pleading

---

[4] Discerning the relevant (and potentially adequately pled) portions of Plaintiffs' Complaint is especially challenging because so much of it is devoted to "events [that] appear to have no factual or legal connection to the events at [Vaughn] giving rise to Plaintiffs' claims." (D.I. 20 at 7) (citing Compl. at ¶¶ 60, 61, 55)

does not give defendants adequate notice of the claims brought against them and the grounds upon which each claim rests." *Litwak v. Tomko*, 2018 WL 1378633, at *5 (M.D. Pa. Mar. 19, 2018); *see also Ridge v. Campbell*, 984 F. Supp.3d 364, 375 (M.D. Pa. 2013) ("It is well settled in the Third Circuit that, for a Section 1983 claim to be adequately pled, the complaint's allegations must show that each named defendant was personally involved in the alleged constitutional violations."). "The plaintiff who files such a shotgun complaint shifts onto the defendant and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support. This is not the job of either a defendant or the Court." *Talley v. Harper*, 2017 WL 413069, at *1 (W.D. Pa. Jan. 31, 2017). These deficiencies plague all of Plaintiffs' claims against the DOC Defendants, requiring dismissal (without prejudice) of the Complaint.

Additional problems arise with respect to specific claims Plaintiffs appear to be trying to allege. For instance, the Complaint fails to adequately allege a conspiracy count under Section 1983.[5] A conspiracy under § 1983 requires "(1) an agreement of two or more conspirators (2) to deprive the plaintiffs of a constitutional right (3) under color of state law." *Henry v. CO#2 Gilara*, 2017 WL 3424863, at *5 (W.D. Pa. Aug. 9, 2017); *see also Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010); *Ridgewood Bd. Of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999). "[A] complaint alleging conspiracy must flesh out in some detail the nature of the scheme." *Loftus v. S.E. Pennsylvania Transp. Auth.*, 843 F. Supp. 981, 987 (E.D. Pa. 1994). Plaintiffs do not adequately flesh out allegations of direct deprivations of rights, nor communications among Defendants to do so. The Complaint

---

[5] As the DOC Defendants note, "Plaintiffs made no attempt to identify which Counts apply to which Defendants." (D.I. 20 at 17)

13

fails to sufficiently and plausibly allege coordination and agreement among the DOC Defendants. (*See* D.I. 30 at 8-9) ("Plaintiffs give no indication of when or how all Defendants reached an agreement, or even how it was remotely plausible for such a large, disparate group to communicate such an agreement. Plaintiffs also make no allegations as to the scope or duration of such an agreement.")

With regard to Plaintiffs' allegations of supervisory liability against the DOC Defendants, the DOC Defendants argue that "Plaintiffs have not identified any direction, planning, or guidance that the supervisory personnel gave DOC personnel that resulted in the alleged constitutional violations." (D.I. 20 at 19) Plaintiffs allege that "abuse by C/O's has continued for years despite inmate complaints and grievances that were sent to the highest levels of DOC administration and to the government officials with oversight of DOC. . . . Theoretically the DOC defendants have copies of those grievances and, if they believe they handled them appropriately, they can produce whatever proof they have." (D.I. 28 at 12) (quoting Compl. at ¶ 4) This broad, generalized allegation is inadequate.

To the extent Plaintiffs are attempting to impose liability for failure to train, they must "demonstrate that the failure to train proximately caused [a Plaintiff's] constitutional injury by identifying a particular failure in a training program that is closed related to the ultimate injury." *Buoniconti v. City of Philadelphia*, 148 F. Supp. 3d 425, 441 (E.D. Pa. 2015). Plaintiffs have failed to adequately state a claim for failure to train.

The DOC Defendants challenge Plaintiffs' claim of intentional or reckless infliction emotional distress. "A claim for intentional infliction of emotional distress (IIED) requires proof that [Defendants] intentionally engaged in extreme or outrageous conduct that caused severe emotional distress." *Hunt ex rel. DeSombre v. State, Dep't of Safety & Homeland Sec., Div. of*

*Delaware State Police*, 69 A.3d 360, 367 (Del. 2013). "Outrageous behavior is 'conduct that exceeds the bounds of decency and is regarded as intolerable in a civilized community.'" *Id.* Defendants' conduct has to be alleged to have "intentionally or recklessly" caused severe emotional distress to Plaintiffs. *Fanean v. Rite Aid Corp. of Delaware*, 984 A.2d 812, 818 (Del. Super. Ct. 2009). The Court agrees with DOC Defendants that the "Complaint does not make a single allegation of emotional distress ***linked to a particular Plaintiff***." (D.I. 20 at 21) (emphasis added) That is, "Plaintiffs fail to plead any facts concerning an injury to any Plaintiff – the only specific injury recounted is to an inmate who is not a party to this action [Cropper]." (D.I. 30 at 10) Without doing so, Plaintiffs have failed to adequately state a claim.

Given the Court's conclusions, the Court will not address the DOC Defendants' further arguments based on qualified or statutory (Delaware Tort Claim Act) immunity. If Plaintiffs file a Second Amended Complaint and attempt to correct the deficiencies identified in the DOC Defendants' motion and this opinion, the DOC Defendants may again move to dismiss and may assert these additional defenses.[6]

### C. Defendants' Carrothers, West, and Forkum's Motion to Dismiss

Defendants Carrothers, West, and Forkum argue that the complaint should be dismissed as against them because it "does not contain a short and plain statement, the substance of which Moving Defendants can fairly respond" to. (D.I. 18 at 10) (citing Fed. R. Civ. P. Rule 8(a)(2)) For the same reasons already given above with respect to the DOC Defendants' similar contention, the Court agrees with the CWF Defendants.

---

[6] Nor will the Court at this point consider Plaintiffs' suggestion that they may seek class certification, as no motion to do so is before the Court.

The Complaint contains other deficiencies, which Plaintiffs will have to correct in a Second Amended Complaint if this case is to proceed against any of the CWF Defendants.

The CWF Defendants fault the Complaint for including few specific allegations mentioning them by name, arguing that the general allegation they were "involved or aware of or ratified" the riot-day abuse is inadequate and conclusory. (*See id.* at 12) (emphasis omitted) Defendants point out that the Complaint contains several specific allegations of mistreatment against other C/Os, but none against Forkum or West (who is the only female defendant, and therefore should be, in Defendants' estimation, especially recognizable). (*See id.* at 13) According to the CWF Defendants, "[i]t is quite impossible for a given defendant to determine what allegations are made against him or her." (*Id.* at 14)

Plaintiffs respond that because the abuse was carried out by groups of officers who hid their identities, they have done their best, and Defendants are sufficiently "on notice of what they are accused of doing." (D.I. 26 at 9) (citing *Ross v. Gossett*, 2016 WL 335993 (S.D. Ill. Jan. 28, 2016)) The Court is sympathetic to Plaintiffs' difficulties in naming individual Defendants responsible for each individual instance of masked abuse. But to adequately state a claim under these circumstances, Plaintiffs should be able to allege facts making it plausible to believe that each named defendant was a member of the masked brigades, or a perpetrator of non-masked abuse. Plaintiffs also, as already noted, should be able to allege the injuries each of them suffered, how, and when.

Plaintiffs allege that Defendants West and Forkum conspired by not stopping the abuse, relying for this theory of their claim on *Parkell v. Pierce*, 2018 WL 3104406, at *8-9 (D. Del. June 22, 2018). In *Parkell*, the plaintiff alleged specific involvement by certain defendants in formulating policies that were the basis for a claim of deliberate indifference. *See id.* ("[T]he

severity of the 2004 abduction, coupled and the alarming and repeated warnings that prison officials were given about the risks associated with the staffing practices at [Vaughn] is enough, at this stage, to allow for the reasonable inference that a risk of injuries to inmates was 'so great and so obvious' that deliberate indifference can be inferred based on that risk and Pierce, Phelps, and Coupe's failure to respond to it."). Plaintiffs' Complaint in the instant action is devoid of similarly sufficient allegations. Defendant West is named only once in the Complaint, alleged with other Defendants as "having been involved personally, or been aware of and ratified the torture and abuse of inmates at [Vaughn] from February 2, 2017 on." (Compl. at 71) The allegations against West are insufficient to show the requisite degree of involvement in alleged abuse or deliberate indifference to its continuance. The Complaint fails to adequately plead conspiracy.

Plaintiffs' Complaint is more detailed in its claims against Defendant Forkum, who is alleged to have been directly involved in the April 12, 2017 incident. (*See* Compl. at ¶ 45(b)) ("About 50 officers took all of us out of 23-D, with our hands cuffed behind our backs, into the yard. We were forced to sit handcuffed on the ground for hours while officers with guns stood behind us, laughed, and enjoyed themselves.") Defendant Forkum is one of three Defendants directly tied to this allegation. However, the Complaint fails to make clear which Plaintiffs were harmed by Defendant Forkum's actions; this deficiency must be corrected.

Defendant Major Carrothers argues that the Complaint fails to adequately allege supervisory liability against him. (D.I. 18 at 15) Plaintiffs respond that "Carrothers [was] aware that the balaclava-wearing correctional officers would beat and otherwise abuse the inmates in C-building when they made their initial entry into the building, especially since where there were no video cameras to record their actions." (D.I. 26 at 3) Plaintiffs' lengthy citations to the Final

Report[7] do not name any Defendants, including Carrothers, and their insistence that the Report means "no doubt" Carrothers (head of security at Vaughn) received prior warnings (D.I. 26 at 10) is not contained in the Complaint, and so cannot be credited at this stage. The Complaint is devoid of plausible allegations that Carrothers had knowledge of alleged violations and acted with deliberate indifference toward Plaintiffs.

In sum, the Court agrees with the CWF Defendants that the Complaint's "allegations do no more than allege a litany of egregious, tortious actions done by unnamed people against unnamed people." (D.I. 32 at 4) However, because the Court perceives the possibility that claims on which relief may be granted could perhaps be stated by one or more Plaintiffs against one or more of the CWF Defendants, Plaintiffs will have one opportunity to amend their pleadings to address the deficiencies identified in the motion or this opinion.

In sum, the Court will grant the CWF Defendants' motion to dismiss and will provide Plaintiffs another opportunity to amend their complaint.[8]

## V. CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss will be granted – with prejudice as to Governor Carney and without prejudice (except to the extent claims are brought against them in their official capacity) as to the DOC Defendants and the CWF Defendants.

---

[7] The Final Report is not attached to the Complaint. Nor is Exhibit 2 to Plaintiffs' answering brief, which contains additional allegations against Defendant Forkum by Plaintiff Sylvester Shockley. (*See* D.I. 32 at 8) Thus, the Court will not credit the allegations contained in these documents. Plaintiffs will have the opportunity to incorporate these documents in their amended complaint.

[8] Plaintiffs' claims against the DOC and CWF Defendants in their official capacity will be dismissed, as such claims are not cognizable under § 1983. *See Hafer v. Melo*, 502 U.S. 21 (1991); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). This deficiency cannot be corrected in an amended pleading, so the claims against all Defendants in their official capacity will be dismissed with prejudice.

Counsel are advised that as this case proceeds, they are going to have to be compliant with this Court's rules and procedures, as well as more helpful to the Court. The burden is on Plaintiffs, initially, to submit a complaint that is of comprehensible length and organization, specifically identifying which claims are alleged by which Plaintiffs against which Defendants (and if Defendants' specific identities are unknown, some allegation as to the basis on which Plaintiffs are contending any specified Defendant was involved). If Plaintiffs fail to correct these and other deficiencies identified in this Opinion, their Second Amended Complaint will be dismissed with prejudice. Defendants are reminded of the Court's page length requirements, which require (among other things) that briefing be submitted in double-spaced format. *See* D. Del. LR 5.1.1(a). The CWF Defendants failed to comply with this rule in their Reply Brief (D.I. 32), which is mostly single-spaced.

An appropriate Order follows.