IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---

| | |
|---|---|
| ROBERT L. ADGER, et al., | : |
| Plaintiffs, | : |
| v. | :    C.A. No. 18-2048-LPS |
| GOVERNOR JOHN CARNEY, et al., | : |
| Defendants. | : |

---

Stephen A. Hampton, GRADY & HAMPTON, LLC, Dover, DE

James J. Woods, Jr., GRADY & HAMPTON, LLC, Encinitas, CA

    Attorneys for Plaintiffs

James D. Taylor, Jr., SAUL EWING ARNSTEIN & LEHR LLP, Wilmington, DE

Amy L. Piccola, SAUL EWING ARNSTEIN & LEHR LLP, Philadelphia, PA

    Attorneys for Department of Correction Defendants

Arthur D. Kuhl, Robert B. Young, REGER, RIZZO & DARNALL LLP, Wilmington, DE

    Attorneys for Defendants Jeffrey Carrothers, Aaron Forkum, and Abigail West

---

**MEMORANDUM OPINION**

March 30, 2021
Wilmington, Delaware

**STARK, U.S District Judge:**

This case involves claims by 107 individual named Plaintiffs against 52 different defendants. Plaintiffs have now tried five times to state a claim or claims on which relief may be granted, seeking to hold the defendants liable in their individual capacities for reprehensible acts they allegedly took to harm Plaintiffs. (*See* D.I. 1-1, 6, 41, 43, 51-3) Regrettably, Plaintiffs' Fourth Amendment Complaint is little better than Plaintiffs' prior efforts.

Pending before the Court are multiple motions: Plaintiffs' Motion for Reargument (D.I. 38), filed on April 2, 2020; DOC Defendants'[1] Motion to Dismiss Plaintiffs' Second Amended Complaint (D.I. 47), filed on May 22, 2020; Moving Defendants'[2] Motion to Dismiss Plaintiffs' Second Amended Complaint (D.I. 49), filed on May 29, 2020; and Plaintiffs' Motion to Add Inadvertently Overlooked Paragraph to Second Amended Complaint and Correct Typographical Errors (D.I. 51), filed on June 8, 2020.

For the reasons more fully stated in this Opinion, Plaintiffs' motions for reargument and to add will be denied while Defendants' motions to dismiss will be granted.

**I. BACKGROUND**[3]

The matter before the Court relates to the February 2017 prison riot at the James T. Vaughn Correctional Center ("Vaughn") in Smyrna, Delaware. Delawareans will be familiar

---

[1] Comprising all defendants except for Governor John Carney (now dismissed), Jeffrey Carrothers, Aaron Forkum, and Abigail West.

[2] Defendants Jeffrey Carrothers, Aaron Forkum, and Abigail West.

[3] The Court's recitation of the background facts is based on taking the Complaint's well-pleaded factual allegations as true, which the Court is obligated to do at this stage of the proceedings. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) ("A motion to dismiss pursuant to Rule 12(b)(6) may be granted only if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief.").

1

with the events that transpired there: inmates, allegedly seeking to stem continued abuse, and in response to "the increasingly unavailable healthcare, and the increasing scarcity of education, rehabilitation, and recreation options for inmates," (D.I. 36 at 2), took "control of one building in the facility, took hostages, and ultimately took the life of a correctional officer" (*id.*). In seeking to restore access to the facility, the Delaware Department of Correction ("DOC") employed a specific Correctional Emergency Response Team ("CERT"). (D.I. 34 ¶ 7) Plaintiffs allege that in restoring control to Vaughn, members of CERT and DOC staff planned to, and did, brutalize, abuse, and humiliate inmates – allegations about which this Court has already written in detail, in a March 26, 2020 memorandum opinion. (*See generally* D.I. 36) The motions before the Court today relate not to whether the alleged events transpired but, rather, whether the renewed allegations suffice to permit this matter to proceed.

Previously, the Court found that while Plaintiffs' complaint stated allegations that "if true, would be reprehensible" (D.I. 36 at 11) (citing D.I. 20 at 3-4), Plaintiffs also did not "identify which Plaintiff was allegedly involved in, and harmed by, those acts, or which Defendant was the alleged actor" (*id.*). Noting Plaintiffs' obligation to "draft[] a Complaint to put individual defendants on notice of their alleged misconduct, and on notice of which Plaintiff alleges injury as a result of that misconduct" (*id.* at 11), the Court found that Plaintiffs' complaint was a "shotgun pleading" not in line with Third Circuit standards for federal pleadings (*id.* at 12-13).

As a result, the Court dismissed a prior version of the complaint and gave Plaintiffs leave to amend, with instructions on what might be done to make the complaint sufficient. For example, the Court stated that Plaintiffs might "allege facts making it plausible to believe that each named defendant was a member of the masked brigades [CERT], or a perpetrator of non-

Case 1:18-cv-02048-LPS   Document 67   Filed 03/30/21   Page 4 of 15 PageID #: 2053

masked abuse," and "allege the injuries each of them suffered, how, and when." (*Id.* at 16) The Court further instructed Plaintiffs "to submit a complaint that is of comprehensible length and organization, specifically identifying which claims are alleged by which Plaintiffs against which Defendants (and if Defendants' specific identities are unknown, [provide] some allegation as to the basis on which Plaintiffs are contending any specified Defendant was involved)." (*Id.* at 19)

After issuance of the earlier opinion, the Court received a number of new filings. The first sought reargument of the Court's decision to grant the motion to dismiss; the motion included a request for discovery into "JTVCC [Vaughn] attendance records and time slips for all CO's and their supervisors" followed by a limited opportunity to amend. (D.I. 38 at 3) In the alternative, Plaintiffs asked that the Court "'state that if a plaintiff or plaintiffs allege inability to identify their assailants . . . that fact will not be a basis for dismissing their claims in the Second Amended Complaint." (D.I. 38 at 3) Plaintiffs' motion for reargument is fully briefed. (*See* D.I. 38-40)

After filing their motion for reargument, Plaintiffs filed a second amended complaint, as the Court had granted them leave to do. (*See* D.I. 41) That amended complaint was subsequently amended as of right (pursuant to Fed. R. Civ. P. 15(a)(1)), to make "typo

corrections" and to remove Governor John Carney as a defendant.[4] (D.I. 43) ("Third Amended Complaint")

Thereafter, the DOC Defendants moved to dismiss the Third Amended Complaint. (D.I. 47)[5] Moving Defendants then also moved to dismiss, incorporating the DOC Defendants' motion by reference. (D.I. 49) While the parties were in the middle of briefing these motions, Plaintiffs filed a further motion for leave to amend, proposing to add an "inadvertently overlooked paragraph." (D.I. 51) The parties then proceeded to complete briefing on the motions to dismiss and to brief the motion to amend. (*See* D.I. 48, 50, 52-56)

The Court heard argument on the pending motions on October 15, 2020. Subsequent to the hearing, Plaintiffs submitted a notice of subsequent authority (D.I. 63), which the Court has also considered in reaching its decision.

## II. LEGAL STANDARDS

### A. Issues Addressed In Prior Opinion

The Court incorporates by reference its prior, March 2020 opinion on the legal standards applicable to motions to dismiss, Section 1983 claims, Eighth Amendment claims, and issues arising under the Eleventh Amendment. (*See* D.I. 36 at 5-8)

---

[4] Previously, Plaintiffs sought to maintain the action against the Governor for his role in the activities pled. The Court dismissed that action for failure to allege "personal involvement or supervisory responsibility for the pleaded injury" by the Governor. (D.I. 36 at 9)

[5] Although D.I. 43 is styled as a further amended "Second Amended Complaint" (and the motion to dismiss briefing refers to it as such), it is nonetheless the third amended complaint in this action.

4

**B.     Motion For Reargument**

A motion for reargument is governed by Local Rule 7.1.5. *See, e.g., Helios Software, LLC v. Awareness Techs., Inc.*, 2014 WL 906346 (D. Del. Mar. 5, 2014). A motion for reargument "must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Parkell v. Frederick*, 2019 WL 1435884, at *1 (D. Del. Mar. 31, 2019) (internal citations omitted). Reargument may be appropriate where "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the court by the parties, or has made an error not of reasoning but of apprehension." *Wood v. Galef-Surdo*, 2015 WL 479205, at *1 (D. Del. Jan. 26, 2015) (internal quotation marks omitted). While the decision on a motion for reargument is within the discretion of the Court, such motions "should only be granted **sparingly**." *Kavanagh v. Keiper Recaro Seating, Inc.*, 2003 WL 22939281, at *1 (D. Del. July 24, 2003) (emphasis added).

**C.     Motion For Leave to Amend**

Federal Rule of Civil Procedure 15(a)(2) of the Federal Rules of Civil Procedure provides that after a responsive pleading has been filed, a party may amend its pleading "only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." The decision to grant or deny leave to amend lies within the discretion of the court. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Secs. Litig.,* 114 F.3d 1410, 1434 (3d Cir. 1997). The Third Circuit has adopted a liberal approach to the amendment of pleadings. *See Dole v. Arco,* 921 F.2d 484, 487 (3d Cir. 1990). In the absence of undue delay, bad faith, or dilatory motives on the part of the moving party, the amendment should be freely granted, unless it is futile or unfairly prejudicial to the non-moving

5

party. *See Foman,* 371 U.S. at 182; *In re Burlington,* 114 F.3d at 1434. An amendment is futile if it is frivolous, fails to state a claim upon which relief can be granted, or "advances a claim or defense that is legally insufficient on its face." *Koken v. GPC Int'l, Inc.,* 443 F.Supp.2d 631, 634 (D. Del. 2006).

### III. DISCUSSION

#### A. Motion For Reargument

Plaintiffs' motion for reargument seeks not reargument, but instead either third-party discovery or an advisory opinion, neither of which are available forms of relief on a motion for reargument. Typically, motions for reargument "challenge[] the correctness of a previously entered order" and are "considered the functional equivalent of a motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure Rule 59(e)." *Powell v. Abernathy,* 2015 WL 5613159, at *1 (D. Del. Sept. 24, 2015). However, Plaintiffs' motion does not ask the Court to set aside its March 26, 2020 opinion, but instead notes that Plaintiffs "will promptly comply with the Court's Order to file a Second Amended Complaint." (D.I. 38)

Plaintiffs do suggest that the Court order "DOC to produce the relevant JTVCC [Vaughn] attendance records." (D.I. 38 ¶ 2) The Court agrees with DOC Defendants, however, that this request "does not contend that the Court made an error of apprehension, a clear error of fact or law, or that it misunderstood a party. Nor do[es] it contend that there has been any change in the controlling law." (D.I. 39 at 6) The Court further agrees with DOC Defendants that there is no showing "how either reargument or discovery from the DOC or Defendants" (D.I. 39 at 6) would advance Plaintiffs' case, and even if there were such a showing, the proper vehicle for discovery is via a Rule 37 motion (the requirements for which Plaintiffs have not attempted to meet). (*Id.*

6

at 6, 8-9)[6]

Nor can the Court grant Plaintiffs' proposed alternative relief. Plaintiffs suggest the Court modify its March 26, 2020 opinion with language that "if a plaintiff specifies one or more of those reasons why he cannot identify his assailants, that will be enough to survive another Motion to Dismiss." (*Id.* ¶ 3) In addition to being untethered to the Rule 59(e) requirements for reargument, opining on the validity of a future legal argument would constitute an improper advisory opinion. This Court cannot "give opinions advising what the law would be upon a hypothetical state of facts." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013); *see also Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 649 (3d Cir. 1990) ("[M]aking law without finding the necessary facts constitutes advisory opinion writing, and that is constitutionally forbidden.").

Accordingly, the Court will deny Plaintiffs' motion for reargument.

## B. DOC Defendants' Motion to Dismiss

The decision on whether to dismiss Plaintiffs' Third Amended Complaint presents the troubling question of to what extent the pleading rules should foreclose potentially meritorious claims. As no party disputes, Plaintiffs' allegations, if true, are reprehensible. (*See, e.g.*, D.I. 48 at 4) But weighing against this is the fact that, in this litigation, the Court has invested significant time and resources into parsing the language of the various complaints, which advance a web of confusing allegations that still do not make clear who allegedly did what and to whom at what time. As was previously the case, Plaintiffs (who are represented by counsel)

---

[6] It is also true that, in connection with briefing the earlier round of motions, the parties agreed: "Discovery in this matter shall be stayed, pending disposition of Defendants' motions to dismiss." (D.I. 25 at 2; *see also id.* at 1 ("[T]he parties agree that, to avoid unnecessary burden and expense, including but not limited to motion practice seeking to defer, narrow or limit discovery, discovery should be stayed pending disposition by the Court of the pending motions to dismiss, following which there will be greater clarity regarding the claims and parties (if any) remaining in the case."))

7

have again failed to plead a claim. Thus, the Court will grant the DOC Defendants' motion.

Much of what the Court previously wrote of Plaintiffs' earlier complaint pleading remains true and applicable to the Third Amended Complaint. The Third Amended Complaint, like the First, leaves the reader "unaware of who exactly is being accused of what conduct." (D.I. 36 at 12) Indeed, like the First, the Third Amended Complaint "is devoted to 'events [that] appear to have no factual or legal connection to the events at [Vaughn] giving rise to Plaintiffs' claims." (*Id.* at 12 n.4) Additionally, the Court is left with the burden "'of identifying the plaintiff's genuine claims and determining which of those claims might have legal support.'" (*Id.* at 13) (quoting *Talley v. Harper*, 2017 WL 413069, at *1 (W.D. Pa. Jan. 31, 2017)) But that "is not the job of either a defendant or the Court." (*Id.*)

Plaintiffs spend much of their time pointing to how the Third Amended Complaint is adequate, but their arguments fall short. Plaintiffs first suggest, essentially, that DOC knows the names of every employee involved with the actions at Vaughn. (D.I. 53 at 7) As such, Defendants purportedly "know perfectly well what they have done" and "knew who was involved, what was done, when it was done, and where it was done." (*Id.*) Even if they did not know, Plaintiffs continue, "evidence of what happened to any plaintiff on a particular date is strong evidence of what happened to other plaintiffs on that date." (*Id.* at 8) It is not a defendant's job, however, to review allegations, determine if that sounds like them, and then essentially admit liability. It is, instead, a plaintiff's burden to make out those allegations, in a short and clear statement, sufficient to provide a defendant as to what he or she is alleged to have done. *See generally* Fed. R. Civ. P. 8.

Plaintiffs' resort to propensity-type arguments is tantamount to a concession that, in fact, no adequate allegation is made. Indeed, Plaintiffs' answering brief is filled with general

8

language to the effect that "many" defendants conspired together (D.I. 53 at 18), or that actions were "probably witnessed by one or more defendants" (*id.* at 7). In the absence of specific allegations tying specific defendants to specific actions against specific plaintiffs, Plaintiffs' argument that "they know that they did it" cannot suffice.

To the contrary, the Third Amended Complaint can, like the First Amended Complaint, be fairly characterized as a "shotgun pleading." The Court agrees with the DOC Defendants that the Third Amended Complaint "includes broad allegations of harm suffered by scores of undifferentiated inmates caused by dozens of undifferentiated Defendants." (D.I. 48 at 8) The DOC Defendants point out that "Plaintiffs have identified particular Defendants and particular injuries in connection with some allegations" (*id.* at 10), but they have not done enough to comply with the pleading requirements. As the DOC Defendants point out:

- 15 named plaintiffs are not mentioned in any factual allegations
- 33 plaintiffs are not linked to any alleged wrongdoing
- 24 defendants are not linked to alleged wrongdoing
- 27 defendants are not linked to wrongdoing specific to infliction of emotional distress
- 35 individuals who suffered injuries are named but not included as a plaintiff
- and 46 individuals are named in alleged wrongdoing but are not named as defendants.

(D.I. 48 at 4-5)

The Court recognizes the difficulties Plaintiffs face in naming individuals who may have concealed their identities. That is why the Court noted in its prior opinion: "Plaintiffs are not expected to identify the unidentifiable, but they are expected to identify which *plaintiffs* are the victims of each alleged act of misconduct." (D.I. 36 at 12) Plaintiffs have failed to do so. That

9

shortcoming, combined with other shortcomings in linking specific defendants and actions, makes the Third Amended Complaint no less a "shotgun pleading" than the First.

Nor does the Third Amended Complaint fare any better than the First with respect to its legal theories. As the Court noted in March 2020, Plaintiffs' § 1983 theory alleged a conspiracy resulting from a planned scheme to violate Plaintiffs' civil rights that did not "adequately flesh out allegations of direct deprivations of rights, nor communications among Defendants to do so." (D.I. 36 at 13) On this theory, Plaintiffs' earlier complaint was devoid of allegations of "coordination and agreement among the DOC Defendants" (*id.* at 14) – and the same remains true of the Third Amended Complaint. Plaintiffs point solely to allegations that certain defendants "who wore masks or balaclavas, and/or removed or obscured their name tags, and otherwise hid their identities did so in concert, by prior agreement, with the intent to brutalize inmates and take/break/destroy the inmates' personal belongings without fear of being identified and brought to justice." (D.I. 43 ¶ 110; *see* D.I. 53 at 17) That allegation does not contain communications, coordination, or agreement – only conclusory allegations that there was, in fact, some sort of coordination. The Court agrees with the DOC Defendants that Plaintiffs "give no indication of when or how the 52 Defendants reached an agreement" and do not make allegations "as to the scope or duration of such an agreement." (D.I. 48 at 12)

Similarly, the Court noted in March 2020 the paucity of allegations of supervisory liability. (D.I. 36 at 14) In Plaintiffs' view, "the brutalization of inmates on many subsequent dates and [supervisors'] failure to act signified approval and ratification of such conduct." (D.I. 53 at 13) But in March 2020, the Court wrote that "Plaintiffs have not identified any direction, planning, or guidance," adding that "broad, generalized allegation[s]" of continued abuse were inadequate. (*Id.* at 14) The same remains true with the new complaint. Again, "Plaintiffs make

10

conclusory allegations that the named supervisory Defendants either received complaints or were aware of incidents of excessive force prior to the alleged violations." (D.I. 48 at 15) These allegations do not suffice to state a claim that requires allegations of personal knowledge or acquiescence.

Alternatively, Plaintiffs might be attempting to allege supervisory liability by highlighting failures to train. As the Court noted in March 2020, such claims must show proximate causation between the failure to train and the injury suffered. (D.I. 36 at 14) There are no such allegations here – only conclusory allegations that training was insufficient. (*E.g.*, D.I. 43 ¶ 123) Absent any connection between allegedly substandard training and the injuries suffered, Plaintiffs have not pled a failure to train claim on which relief may be granted.

Finally, the Court previously addressed the intentional infliction of emotional distress claim, noting that Plaintiffs failed to link allegations to particular plaintiffs. (D.I. 36 at 15) While now there are allegations with respect to approximately 50 plaintiffs, there are not allegations with respect to the remaining 57. As the DOC Defendants observe, "Count IV [the intentional infliction of emotional distress count] makes no attempt to distinguish among all these individuals and merely appears to assert claims on behalf of all Plaintiffs against all Defendants." (D.I. 48 at 18) The Court agrees. Count IV improperly attempts to bootstrap claims of specific plaintiffs into a claim for all plaintiffs. This is neither consistent with the Federal Rules nor the Court's previous ruling.

Given these findings, the Court will not address further arguments related to qualified or statutory (Delaware Tort Claims Act) immunity, or statute of limitations defenses.

Further, the Court's dismissal will be with prejudice. Plaintiffs have now filed four complaints, several following Defendants' and the Court's identification of flaws in earlier

11

versions. Yet they are no closer to stating a claim on which relief may be granted, in compliance with pleading standards, than they were previously. Despite the preference of courts to adjudicate claims on their merits – and, hopefully, reach the truth of what happened, redress proven wrongs, and do justice – the Court cannot do so when Plaintiffs fail to do what is required to give Defendants notice and begin to press their case. Permitting another amendment would be unfairly prejudicial to the DOC Defendants.

Accordingly, the Court will grant the DOC Defendants' motion to dismiss and will dismiss all claims against them with prejudice.

### C.   Moving Defendants' Motion to Dismiss

Moving Defendants' Motion to Dismiss is identical to that of the DOC Defendants. As their opening brief points out, "the position of Moving Defendants is identical to that of the DOC Defendants. Accordingly . . . Moving Defendants . . . adopt and incorporate by reference as if fully rewritten herein the entirety of the Opening Brief of the DOC Defendants." (D.I. 50 at 1)

The Amended Complaint does contain certain allegations with respect to each of the Moving Defendants. Sgt. Forkum is alleged to have assaulted plaintiffs Sylvester Shockley and David Miller. (D.I. 43 ¶ 41) Officer West is alleged to have strip-searched plaintiffs Bagwell, Boyer-Smith, Burrell, Congo, George, and others. (*Id.* ¶ 56) Defendant Carrothers is alleged to have improperly supervised employees. (*Id.* ¶¶ 121, 124-25) These allegations, however, are not sufficient to alter the Court's conclusions – announced above in connection with the DOC Defendants' motion – and to find that Plaintiffs have adequately stated any claim against any of the Moving Defendants. Therefore, consistent with the analysis provided above, the Court will also grant Moving Defendants' motion and dismiss the claims against them with prejudice.

### D. Plaintiffs' Motion to Amend

Plaintiffs' Motion to Amend (D.I. 51) seeks to correct typographical errors and to add an omitted paragraph. That paragraph reads:

> Due to the concerted and premeditated efforts of all CERT members, with the approval of the supervisory defendants, to hide their identities, including the balaclavas, riot helmets, and missing/obscured name tags, removing inmates' eyeglasses, pepper-spraying them in the face, ordering the inmates not to look at them, striking their heads, etc., many plaintiffs are unable to identify their February 2, 2017 assailants, including plaintiffs Ayers, Bass, Bennett, Caraballo, Chandler, Clifton, Cole, Congo, Conley, Craig, Damiani-Melendez, Dickerson, Drumgo, Fogg, Forney, Hand, Hester, Hibbs, Antoine Jones, Lawhorn, Lewis, Lowman, MacConnell, Mayhew, McCane (nine-day nose bleed after an unidentifiable CERT member bashed his nose with the butt end of a rifle), McCray, McLaughlin, Mencia, Morton, Mozick, Newton, Perry, Rittenhouse, Rivera, Rogers, Rosser, Roten, Rowley, Sears, Shankaras, Smith (several CERT members punched and kicked him, and threw him down a flight of stairs, all while his hands were zip-tied behind his back), Steedley, Sykes, Szubielski, Henry Taylor, Teagle, Joseph Wallace, Walley, Walsh, Wells, Eubanks White, Cliff Wilson, Warren Wilson, and Worley.

(D.I. 51 Ex. 3 at 57-58 ¶ 104) These allegations do not resolve the substantial deficiencies already described with respect to the Third Amended Complaint. While this paragraph does make progress toward meeting the Court's directive that the pleadings "identify which ***plaintiffs*** are the victims of each alleged act of misconduct" (D.I. 36 at 12) (emphasis added), the proposed amendment does not further "allege facts making it plausible to believe that each named defendant was a member of the masked brigades [CERT], or a perpetrator of non-masked abuse" or "allege the injuries each of them suffered, how, and when" (*id.* at 16). In view of all the problems the Court has identified with the Third Amended Complaint, this paragraph does not suffice to make the pleading of any claim by any plaintiff survive the motions to dismiss.

Case 1:18-cv-02048-LPS   Document 67   Filed 03/30/21   Page 15 of 15 PageID #: 2064

Therefore, this amendment would be futile and, for that reason, the Court will deny Plaintiffs' motion.[7]

## IV. CONCLUSION

An appropriate Order follows.

---

[7] It is also the case that in its March 2020 opinion, the Court advised Plaintiffs that they would "be given ***one final opportunity to amend***." (D.I. 36 at 1) (emphasis added)

14