Case 1:18-cv-02048-GBW  Document 89  Filed 12/18/23  Page 1 of 15 PageID #: 2253

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROBERT L. ADGER, II, et. al.,
for themselves and all others similarly
situated,

                 Plaintiffs,

v.

FORMER COMMISSIONER
ROBERT COUPE, et. al.,

                 Defendants.

C.A. No. 18-2048

---

Stephen A. Hampton, GRADY & HAMPTON, LLC, Dover, Delaware

    *Counsel for Plaintiffs*

Robert B. Young, REGER, RIZZO & DARNALL, LLP, Dover, Delaware; Arthur D. Kuhl, Matthew Robert Hindley, REGER RIZZO & DARNALL LLP, Wilmington, Delaware

    *Counsel for Defendants Major Jeffrey Carrothers, c/o Abigail West, and c/o/ Aaron Forkum*

James D. Taylor, Jr., Juliana G. Clifton, Marisa R. De Feo, SAUL EWING ARNSTEIN & LEHR LLP, Wilmington, Delaware; Amy L. Piccola, SAUL EWING ARNSTEIN & LEHR LLP, Philadelphia, Pennsylvania

    *Counsel for Delaware Department of Correction Defendants*

## MEMORANDUM OPINION

December 18, 2023
Wilmington, Delaware

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

This case involves claims by 107 individually named Plaintiffs against 52 different defendants. D.I. 6 ("First Amended Complaint" or "FAC").[1] The matter before the Court relates to the February 2017 prison riot at the James T. Vaughn Correctional Center ("Vaughn") in Smyrna, Delaware.

On September 22, 2023, Defendants filed a joint motion to sever claims ("Motion to Sever"). D.I. 82. Briefing has concluded on this motion. D.I. 82, D.I. 83, D.I. 85. A related Motion to Compel discovery, D.I. 84, was filed on October 6, 2023, and briefing concluded on this motion as well. D.I. 84, D.I. 86; D.I. 88.

## I. BACKGROUND

Inmates, allegedly seeking to stem continued abuse, and in response to the "increasingly unavailable healthcare, and the increasing scarcity of education, rehabilitation, and recreation options for inmates," D.I. 36 at 2, took "control of one building in the facility, took hostages, and ultimately took the life of a correctional officer." D.I. 67 at 2.

In seeking to restore access to the facility, the Delaware Department of Correction ("DOC") employed a specific Correctional Emergency Response Team ("CERT")." D.I. 6, ¶¶ 18-19. Plaintiffs allege that, in restoring control to Vaughn, members of CERT and DOC staff planned to, and did, brutalize, abuse, and humiliate inmates. *See, e.g.*, the Background Section of D.I. 36 ("March 2020 Memo Opinion") at 2-5. Plaintiffs also allege related incidents of retaliation took place at Howard R. Young Correctional Institute ("Young"). *Id.*

_____
[1] This case was removed from the Delaware Superior Court. D.I. 1 ("Notice of Removal").

1

Plaintiffs have attempted multiple times to succeed past the motion to dismiss stage. On March 26, 2020, Judge Stark ruled on three motions to dismiss. The Court granted the motion to dismiss against Governor Carney with prejudice. D.I. 36 at 1. The Court granted the motions to dismiss against the DOC Defendants and Defendants Carrothers, C/O Abigail West, and C/O Aaron Forkum (the "CFW Defendants") without prejudice. *Id.*

After filing a motion for reargument, Plaintiffs filed a second amended complaint, D.I. 41, as the Court had granted them leave to do so. That amended Complaint was subsequently amended to make typographical corrections and remove Governor Carney as a defendant. D.I. 43 ("SAC")[2]. The Court denied Plaintiffs' motion for reargument, D.I. 38, and denied Plaintiffs' motion to amend the Third Amended Complaint, D.I. 51. D.I. 68. The Court granted Defendants' motions to dismiss the SAC with prejudice. D.I. 68. *See also* D.I. 67 ("March 2021 Memo Opinion").

Plaintiffs appealed the latest memorandum opinion to the Third Circuit. D.I. 71 ("3d Opinion"); *Adger v. Coupe*, No. 21-1841, 2022 WL 777196, at *2 (3d Cir. Mar. 14, 2022). The Third Circuit decided on the papers, affirming in part (holding that Plaintiffs' section 1983 claims and their conspiracy claims were properly dismissed) and reversing in part (holding that "at least some" of the Plaintiffs' claims comply with FRCP Rule 8). *Adger*, 2022 WL 777196, at *2.

While ruling that the case may proceed on the remaining claims, the Third Circuit made clear that the SAC was disorganized and confusing as it "contained a significant amount of extraneous material, difficult to follow allegations, and allegations regarding individuals who are not parties to this litigation." *Id.* at *2. In its conclusion, the Third Circuit suggested that this Court and the

---

[2] Despite the corrected complaint being a third Amended Complaint, D.I. 43 will be referred to as the Second Amended Complaint or SAC.

parties consider voluntary dismissal of certain parties and limited discovery, evincing a belief that the SAC is not properly pled when taken as whole. *Id.* at *4.

According to Defendants, they are "left unsure what claims are and are not viable, and the individual defendants still do not know what they are accused of and by whom." D.I. 82 at 3. Plaintiffs have filed a broad request for production of documents and ultimately followed through with the motion to compel. D.I. 84. Plaintiffs have not yet amended their complaint. Defendants have objected to the requests' breadth and scope of Plaintiffs' document requests, but "nevertheless endeavored to produce some documents with the hope it would result in a narrowing of parties and claims." D.I. 82 at 4.

## II. MOTION TO SEVER

The Defendants argue that "severance of the claims either by Plaintiff, or by date or type of incident, would permit the parties to address who does and does not have a viable claim and to move the case forward." D.I. 82 at 4.

### A. Legal Standard

When considering whether to sever, courts follow the transaction or occurrence test which looks to whether a plaintiff's claims arise out of the "same transaction, occurrence, or series of ... occurrences." Fed. R. Civ. P. 20(a)(1)(A). Federal Rule of Civil Procedure 42(b) affords courts discretion to sever claims, "[f]or convenience, to avoid prejudice, or to expedite and economize." FED. R. CIV. P. 42(b); *see also Odin's Eye Entm't v. Does* 1-66, C.A. No. 12-1389-RGA, 2013 WL 5890408, at *1 (D. Del. Oct. 31, 2013).

3

## B. Analysis

### 1. Same Transaction or Occurrence

Defendants begin by asserting that instances that occurred at different points and dealt with different people should be severed. *See Thompson v. Ferguson*, 849 F. App'x 33, 36 (3d Cir. 2021) (finding that the district court did not abuse its discretion by severing plaintiff's mail-tampering claims because "factual allegations concerning the handling of his mail present[ed] a distinct set of events from those related to the destruction of his property" and implicated different defendants: the CERT defendants were not involved in the mail-tampering claims, and communications defendant was not involved in the destruction-of-property claims); *Staats v. Phelps*, C.A. No. 19-101-LPS, 2019 WL 4415404, at *8 (D. Del. Sept. 16, 2019) ("When Plaintiffs commenced this action, all of them were housed at the JTVCC. Since then, Staats has been transferred to SCI Albion in Pennsylvania, Ayers has been transferred to SCI Huntingdon in Pennsylvania, Shankaras has been released from prison, and Michaels has been transferred to SCI in Georgetown, Delaware. Only Haqq remains housed at the JTVCC. The need for all Plaintiffs to agree on all filings made in this action, and the need for all filings to contain the original signatures of all Plaintiffs, will lead to delay and confusion. Therefore, in order to avoid delay and endless confusion about what each individual Plaintiff's claims may be, and against whom, it is necessary to sever the case and permit each Plaintiff to state his own individual claim(s) based on the facts relevant to February 2017 prison uprising and how each Plaintiff was affected.").

Defendants further assert that "[t]he procedural history, multiple amendments, and number of parties in this litigation illustrate the challenges facing this Court in case administration. Moreover, allowing the over one hundred claims to proceed together would severely

4

'undermine[] the purpose of the [Prison Litigation Reform Act], which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts.'" D.I. 82 at 6 (quoting *Sanders v. Washington*, 2022 WL 575179 at *5 (W.D. Mich. Feb. 25, 2022)).

The SAC is sixty-six (66) pages of allegations: Plaintiffs refer to nineteen (19) separate and distinct dates, spread out over a period of eighteen months, as the "Critical Dates" of the alleged misconduct by DOC employees. D.I. 82 at 1. The SAC alleges misconduct against multiple DOC and CERT defendants and also across two different correctional institutes.[3] *Id.* Defendants assert that "allowing the Plaintiffs' claims to continue in one action creates a very real risk that defendants will be found liable simply because their name is thrown into a bin of dozens of named defendants similarly accused of misconduct." *Id.*

In response, Plaintiffs assert that the motion is premature in light of the state of discovery. D.I. 83 at 9. Plaintiffs contend that, so far, "defendants produced medical records for some plaintiffs but not 64 others, duty rosters for only four Critical Dates[4], no forwarding or last-known addresses for plaintiffs who have been released from DOC custody, and no incident or investigative reports on any use of force." *Id.*

In support, Plaintiffs cite to *Davis v. Neal*, C.A. No. 21-1773-TLA, 2023 WL 5289445 (D. Del. Aug. 17, 2023). In *Davis*, Judge Ambro—sitting by designation—denied a motion to sever. 2023 WL 5289445, at *12. The opinion recognized that "[p]laintiffs' claims here more closely resemble a pattern of related abuse than logically dissimilar events" and that "Defendants

---

[3] The vast majority of the instances happened at Vaughn, where the riot took place. However, the SAC also refers to instances where potential witnesses in the criminal trial of the hostage takers during the riot were transferred to Young, where they were allegedly harassed. D.I. 43, ¶¶ 67-69.

[4] The Critical Dates, on which abuse occurred, are February 2, 4, 6, 7, 13, 14, 15, and 27, March 9, 22, 27, and 31, April 12, and September 3 in 2017, and March 15 and 31, April 17, and October 31 and November 6 and 7 in 2018. *Id.* at 9 n.3.

5

created a 'systemic pattern of abusive and unlawful conduct' and that SCI's Warden Mears and Deputy Warden Beck 'ratified and institutionalized' a practice of such conduct." *Id.* at *11. The court in *Davis* goes on to say:

> The Complaint's specific allegations, which detail abuse occurring at a frequent and regular rate in the period beginning in early 2020 and continuing through early 2022, confirm the pattern. The Complaint also includes allegations that many Defendants engaged in abuses against multiple Plaintiffs. The alleged instances of violence, though they occurred on different days, are logically related because Plaintiffs allege they are part of a larger, frequent, and consistent pattern of violence and abuse at SCI. Thus, I find the claims represent a series of occurrences that satisfy the first element of Rule 20.

*Id.* at *11.

This case is markedly similar to *Davis*, as the claims here all arise out of the same transaction or occurrence—the February 2017 riot and subsequent retaliation for that event. In *Davis*, Judge Ambro found that, while the complaint covered incidents over the span of two years and involved multiple plaintiffs and multiple defendants, the complaint alleged "a systemic pattern of abuse and unlawful conduct." *Davis*, 2023 WL 5289445, at *11. Here, Plaintiffs allege that the instances arise from the "same transaction"—the February 2017 Riot and subsequent acts of retaliation against the inmates who were present during the Riot that resulted in the death of CO Floyd. In other words, the consistent pattern and abuse stems from the same instance—the Riot—and share multiple defendants and plaintiffs. D.I. 83 at 11-13. *But see Parkell v. Linsey*, 2017 WL 3485817, at *3-4 (D. Del. Aug. 14, 2017) (no logical relationship as to claims relating to an illegal strip search, interference with legal mail, First Amendment religious discrimination, and Eighth Amendment medical needs); *Crichlow v. Doe*, 2012 WL 1673004, at *2 (D. Del. May 11, 2012) (similar); *Drumgo v. Burris*, 2012 WL 1657196, at *2 (D. Del. May 9, 2012) (similar).

2. *Judicial Economy*

Rule 20 permits joinders where plaintiff's claims arise out of the "same transaction, occurrence, or series of ... occurrences." Fed. R. Civ. P. 20(a)(1)(A). Plaintiffs here meet that test. The *Davis* opinion distinguishes many of the same cases cited by Defendants in their briefing, saying "[m]uch of the caselaw involves claims so logically dissimilar that they are unhelpful in resolving the current motion." *Id. See Salley v. Sec'y Pennsylvania Dep't of Corr.*, 565 F. App'x 77, 79 (3d Cir. 2014) (claims as varied as withholding of property, denial of medical needs, and racial discrimination); *Mincy v. Klem*, 303 F. App'x 106, 107 (3d Cir. 2008) (claims as varied as due process violations, interference with mail, and physical abuse); *Biggins v. Danberg*, 2012 WL 37132, at *2 (D. Del. Jan. 6, 2012) (claims as varied as unsanitary food practices, denial of medical needs, religious discrimination, and mail tampering); *Drumgo v. Burris*, 2012 WL 1657196, at *2 (D. Del. May 9, 2012) (allegations included "completely unrelated claims such as conditions of confinement, religion, access to the courts, and retaliation"); *Staats v. Phelps*, 2019 WL 4415404, at *8 (D. Del. Sept. 16, 2019) ("the Court's reasoning there turned on plaintiffs acting *pro se* and having trouble coordinating their filings from different prisons, but Plaintiffs here are represented by counsel, who can coordinate filings on their behalf and thus "[t]he need for all Plaintiffs to agree on all filings made in this action, and the need for all filings to contain the original signatures of all Plaintiffs, will lead to delay and confusion.").

Federal Rule of Civil Procedure 42(b) affords courts discretion to sever claims "[f]or convenience, to avoid prejudice, or to expedite and economize." Regarding judicial economy and prejudice, the *Davis* case explained that "[e]ven on a coordinated schedule, dividing one case into 39 does not serve judicial economy" and "Defendants will not be unduly prejudiced absent

severance. Although different Defendants participated in the alleged abuse in varying degrees, jurors will be able to distinguish claims against one officer from claims against another. The claims, though numerous, are not too difficult to understand or isolate." *Id.* at *12. The issue here is that the claims are difficult to isolate and thus Plaintiffs need to file an amended pleading with clearer claims. But the answer is not to create over 100 individual cases that share instances arising from the same transaction.

In finding that some claims may survive Rule 8, the Third Circuit concluded by saying "[t]he District Court may decide in the first instance whether further amendment of the complaint is appropriate or whether other avenues exist to focus the issues such as voluntary dismissal of certain parties, limited discovery, or party stipulations regarding further motions directed at the pleadings." *Adger*, 2022 WL 777196, at *4. Of these options, Plaintiffs have failed to engage in voluntary dismissals and the parties have failed to stipulate regarding future motions directed at the pleadings. Thus, this Court will DENY the motion to sever in favor of engaging in limited discovery. This brings us to the Motion to Compel, D.I. 84.

### III.   MOTION TO COMPEL

Concurrent with the briefing for the Motion to Sever, Plaintiffs filed a motion to compel discovery. D.I. 84.

#### *Plaintiffs' Argument*

Following the Third Circuit's opinion, Plaintiffs sought discovery.[5] Defendants served written responses, which included many general and specific objections to the requests.[6] As

---

[5] Plaintiffs claimed to have attached their First Set of Interrogatories and First Requests for Production, see D.I. 84 at 2-3, but they were never attached.

[6] Again, Plaintiffs claimed to but ultimately failed to include Defendants' objections and responses. D.I. 84 at 3.

8

Plaintiffs put it, Defendants objected to much of the requests as being "overly broad, vague, unduly burdensome[.]" D.I. 84 at 4.

The DOC defendants produced approximately 3,670 pages of documents electronically on April 21, 2023. D.I. 84 at 4. But Plaintiffs are unhappy with the quality. For example, Request 23 seeks "time sheets or other records" showing hours worked on each Critical Date. The DOC defendants produced 565 pages of work schedules, instead of time sheets, and fewer than 50 of those pages (the February 13-15 and March 9, 2017 schedules) are for Critical Dates. For the 17 remaining Critical Dates, the defendants have produced no records of the hours they worked. The 3,670 pages are not grouped or labeled as responses to individual requests for production, and some allegedly bear as many as four different Bates numbers. Many of the documents are medical records of certain plaintiffs, but for at least 64 plaintiffs, no medical records were produced. D.I. 84 at 5. Where DOC defendants redacted information, Plaintiff asserts that Defendants failed to provide explanations or a privilege log. D.I. 84 at 5.

Plaintiffs seek, "at minimum, that each defendant must confirm his or her presence in Vaughn or Young on the Critical Dates. D.I. 84 at 6. Plaintiff asserts that it will voluntarily dismiss claims against defendants that "can prove" he or she was not present on the Critical Dates. *Id.* Plaintiffs also request the names and last-known addresses of the Plaintiffs who are no longer in DOC custody, as some of the Plaintiffs may not know that their case is still active and counsel needs to contact them. Plaintiffs also seek an interrogatory response to whether any defendant or any other DOC employee was disciplined for his or her treatment of an inmate or inmates on any of the Critical Dates. *Id.* at 7.

Plaintiffs argue that FRCP 34(b)(2)(E)(1) requires the defendants to "organize and label [the documents produced] to correspond to the categories in the request" for production. The

9

defendants did not do so, which is an especially serious problem given the thousands of pages produced. *Id.* at 7. But this is misleading. The rule says "[a] party must produce documents as they are kept in the usual course of business **or** must organize and label them to correspond to the categories in the request."

First, Defendants agree to collect, review, and produce DOC personnel records, which contain information on formal discipline on DOC, but do not believe that they should be required to produce them until Plaintiffs identify a refined list of Defendants. *Id.* at 8.

Pertaining to Rule 34, the DOC Defendants contend that they produced all records as they were kept in the ordinary course of business and, thus, satisfy Rule 34(b)(2)(E)(i). *See Karakozova v. Univ. of Penn.*, 2011 WL 238711, at *2 (E.D. Pa. Jan. 21, 2011) (finding that defendant fulfilled its Rule 34 obligation by representing that it produced the documents as they are kept in the ordinary course of business and therefore "[d]efendant is not obligated to organize documents produced to correspond with the categories identified in plaintiff's discovery requests.").

Plaintiffs simply cannot meet their burden of demonstrating that the discovery sought is relevant to the case without first clarifying what claims, if any, are still at issue. And discovery on claims which Plaintiffs may ultimately abandon is disproportional to the needs of this case and beyond the scope contemplated by Rule 26." D.I. 86 at 10 (citing *Uitts v. Gen. Motors Corp.*, 62 F.R.D. 560, 562 (E.D. Pa. 1974) (concluding discovery requests relating to unviable theory of case "would not be relevant or reasonably calculated to lead to the discovery of admissible evidence")).

Defendants assert that the requests are indeed too broad and overly burdensome given the large time frame. *See Ponisciak v. Astrue*, 2011 WL 5844194, at *2 (E.D. Pa. Nov. 18, 2011)

(finding plaintiff's discovery requests "overly broad and unduly burdensome due to their eight-year time frame."). For example:

- Request No. 8 seeks a variety of documents, including disciplinary reports, investigatory reports, and promotional letters, which, "**regardless of date**, concern[] or relate[] to any defendant." D.I. 84 at 10.[7]
- Request No. 20 seeks seven years' worth of documents relating to the use of pepper spray at Vaughn and Young. *Id.*

The parties had previously discussed narrowing the claims after the Third Circuit decision. Plaintiffs wrote in a May 2023 email to Defendants: "[o]ur view, almost a year after the 3d Circuit decision, is that all current plaintiffs deserve to remain in the case unless and until we see good reasons that some should be removed. As I've mentioned more than once, if you'd produced a year ago what you should've produced, we'd be much further along now." D.I. 88 at 1. Plaintiffs assert that Defendants are failing to abide by Rule 33(d) because at the end of many discovery responses, they wrote "Notwithstanding, subject to, and without waiver of the foregoing objections, pursuant to Rule 33(d), Defendants will produce documents containing relevant, non-privileged information responsive to this Interrogatory and related to [Vaughn] within their possession, custody, or control after entry of an appropriate confidentiality stipulation."[8] *Id.* at 3.

According to Plaintiffs, Defendants produced 565 pages of work schedules, but only for four of the Critical Dates. Also, the schedules only cover pre-scheduled 8-hour shifts and do not account for overtime, callouts, or holdover shifts, all of which are allegedly frequent at Vaughn.

---

[7] The Defendants also failed to docket exhibits that they cited to, such as Defendants' responses to the First Requests for Production. Additionally, they failed to file a complete certificate of service. D.I. 86-1 ("signed as "s/DRAFT" and no name provided).

[8] This is likely because the responses were written prior to the dismissal and subsequent appeal.

11

*Id.* at 2. Plaintiffs attached a "daily roster," produced by Vaughn in another case, that they contend are far more accurate than work schedules. D.I. 88, Ex. A.

Plaintiffs argue that while "Defense counsel suggest[s] that the plaintiffs dismiss some defendants from this action before defense counsel produce documentation of any disciplinary action against the defendants, based on their acts and omissions on any Critical Date." D.I. 88 at 4. However, "[s]uch an attempt to 'put the cart before the horse' is not reasonable or in accordance with the Federal Rules."[9] *Id.*

Plaintiff counters that Defendants failed to provide evidence that the documents produced were in fact produced through the ordinary course of business and "that the fact that many documents bear up to four different Bates numbers makes such a claim questionable." *Id.* at 4. Plaintiffs cite to an E.D. Pa. case, which stated that "it is appropriate for the producing party to identify which requests for production the producing party is addressing through its production of documents." *Parks, LLC v. Tyson Foods, Inc.*, No. 5:15-CV-00946, 2015 WL 5042918, at *3 (E.D. Pa. Aug. 26, 2015). In the first instance, *Parks* found that, even though the plaintiffs had produced approximately 30,000 documents, most of which were non-responsive, defendants still failed to show that plaintiff had not met their Rule 34 burden and that it was defendants' burden to make some showing that plaintiffs "[were] not entitled to rely on Rule 34's 'usual course of business.'" *Id.* at *3.

Regarding the overbreadth objections, Plaintiffs contend that Defendants should respond concerning a shorter time span instead of simply failing to respond. D.I. 88 at 4. Finally, Plaintiffs argue that, for each request that Defendant failed to address specifically in its briefing, those requests should be deemed conceded and thus responsive documents produced. *Id.* at 5.

---

[9] Plaintiffs do not explain why this is not in accordance with the Federal Rules.

However, Defendants broadly objected to the requests being overly broad and unduly burdensome and that Defendants need not respond to such discovery until the Motion to Sever has been decided. Therefore, Defendants did not waive their objections. D.I. 86 at 6-7.

Upon consideration of all of the above, the Court will GRANT-IN-PART and DENY-IN-PART the Motion to Compel. The Court will allow discovery on two very narrow issues: (1) the daily rosters for each Critical date to show who was working at Vaughn and Young on those dates and in what capacity (i.e., were they a member of CERT), and (2) the last known contact information for plaintiffs in this action that Plaintiffs' counsel cannot reach.

Regarding the daily rosters, these documents will identify who was present on the Critical Dates and enable Plaintiffs to more accurately narrow their claims. The SAC includes instances where the defendants were wearing masks or otherwise obscuring their identity. Learning who was on duty should help Plaintiffs narrow the potential Defendants. *See, e.g.*, D.I. 43, ¶ 50 ("more than 20 DOC employees (CERT) wearing masks and carrying electric shock shields, batons, and Cap-stun canisters (pepper spray), stormed onto the tier yelling threats, obscenities, homophobic slurs and racial epithets."); ¶ 52 ("defendants Drace, Evans, Forkum, Green, Payton, Phelps, Robinson, Tyson, and Wallace, and CERT members wearing black masks, uniforms, and no name tags, suddenly entered W Building[.]"); ¶ 110 ("defendants who wore masks or balaclavas, and/or removed or obscured their name tags, and otherwise hid their identities did so in concert[.]"); ¶ 111 ("On most occasions, all CERT team members hid their identities[.]"); ¶ 112 ("defendant Radcliffe accompanied CERT members who were wearing balaclavas and no legible name tags[.]").

Regarding contact information, while it is true that Plaintiff's counsel should have been able to keep in touch with their clients, the reality of the system is that inmates are transferred or

released over time, and it can be difficult to maintain consistent contact. The entity with access to this information is the DOC, who monitors such movement. The DOC, while not a named party, "agreed to respond to discovery requests as though a subpoena had been served upon it." D.I. 82 at 7 n.5.

Thus, this Court will GRANT-IN-PART and DENY-IN-PART the Motion to Compel. Specifically, the Court allows discovery for two very narrow issues: (1) the daily rosters for each Critical date to show who was working at Vaughn and Young on those dates and in what capacity (i.e., were they a member of CERT), and (2) the last known contact information for plaintiffs in this action that Plaintiffs' counsel cannot reach.

## IV. CONCLUSION

For the reasons explained above, the Court DENIES Defendants' Motion to Sever and GRANTS-IN-PART and DENIES-IN-PART Plaintiffs' Motion to Compel. The Court will issue an Order consistent with this Memorandum Opinion.

14