**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ROBERT L. ADGER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 18-2048-GBW-SRF |
| | ) | |
| ROBERT COUPE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

This is a civil rights action brought by more than 100 current or former inmates ("Plaintiffs")[1] who were incarcerated at the James T. Vaughn Correctional Center ("JTVCC") and suffered injuries during or after a prison uprising that occurred on February 1, 2017. Presently before the court in this putative class action is Defendants'[2] motion to dismiss Plaintiffs' fourth amended complaint ("4AC") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 119; D.I. 121)[3] For the following reasons, I recommend that the court GRANT Defendants' motion to dismiss and DISMISS the 4AC with prejudice. I

[1] There are 107 plaintiffs named in the 4AC. (D.I. 109) The 4AC case caption lists 108 individuals because it includes Dana Martin, who voluntarily dismissed his claims in October of 2024. (D.I. 44; D.I. 109) Plaintiffs concede that Martin was listed unintentionally and should not have been included in the caption. (D.I. 122 at 3 n.1)

[2] Defendants are 172 correctional officers, supervisors, and other individuals alleged to have participated in the violation of Plaintiffs' civil rights. (D.I. 109 at ¶ 2) Defendants Jeffrey Carrothers, Abigail West, and Aaron Forkum are represented by separate counsel and filed a joinder to the motion to dismiss filed by the remaining "DOC Defendants." (D.I. 121) The court refers to the DOC Defendants, Carrothers, West, and Forkum collectively as "Defendants." The case caption of the 4AC lists 173 individuals as Defendants, but this includes a duplicate listing of Jack Evans, Jr. (*Id.*) Plaintiffs concede that this was an error and there is only one defendant named Jack Evans, Jr., so there are 172 defendants. (D.I. 122 at 3 n.1)

[3] The briefing and filings associated with the pending motion to dismiss are found at D.I. 120, D.I. 122, D.I. 123, D.I. 141, and D.I. 142.

further recommend that the court TERMINATE as moot the letter motion of Plaintiff Regent J. Goddard requesting the appointment of new counsel.[4] (D.I. 127)

## I. BACKGROUND

Plaintiffs originally filed this case in the Superior Court of the State of Delaware on October 31, 2018, and it was removed to this court on December 21, 2018. (D.I. 1; D.I. 1-1 at 21) Across multiple iterations of the pleading during the pendency of this case, the core facts of the case remain the same:

> [I]nmates, allegedly seeking to stem continued abuse, and in response to "the increasingly unavailable healthcare, and the increasing scarcity of education, rehabilitation, and recreation options for inmates," (D.I. 36 at 2), took "control of one building in the facility, took hostages, and ultimately took the life of a correctional officer" (*id.*). In seeking to restore access to the facility, the [DOC] employed a specific Correctional Emergency Response Team ("CERT"). (D.I. 34 ¶ 7) Plaintiffs allege that in restoring control to [JTVCC], members of CERT and DOC staff planned to, and did, brutalize, abuse, and humiliate inmates – allegations about which this Court has already written in detail, in a March 26, 2020 memorandum opinion. (*See generally* D.I. 36)

*Adger v. Governor John Carney*, C.A. No. 18-2048-LPS, 2021 WL 1198723, at *1 (D. Del. Mar. 30, 2021), *aff'd in part, rev'd in part and remanded sub nom. Adger v. Coupe*, 2022 WL 777196 (3d Cir. Mar. 14, 2022); *see also Adger v. Coupe*, C.A. No. 18-2048-GBW, 2023 WL 8716828, at *1 (D. Del. Dec. 18, 2023). Those allegedly injured in the confrontation included Plaintiffs, who did not participate in the uprising but were nonetheless physically assaulted and threatened by CERT members. *Adger v. Coupe*, 2022 WL 777196, at *1.

The first amended complaint, which was filed on February 4, 2019, asserted five causes of action for cruel and unusual punishment under the Eighth Amendment, conspiracy, "improper cross-gender strip searches," intentional infliction of emotional distress ("IIED"), and

[4] Goddard's letter request is a matter to be addressed between the attorney and the client, and it does not conform with District of Delaware Local Rules 7.1.2(a) or 83.7.

supervisory liability for failure to train. (D.I. 6 at ¶¶ 77-93) On March 26, 2020, the court issued a Memorandum Opinion dismissing the first amended complaint as a "shotgun pleading" under Federal Rule of Civil Procedure 8 and identifying additional deficiencies in Plaintiffs' claims for conspiracy, supervisory liability, and intentional infliction of emotional distress ("IIED"). (D.I. 36 at 11-15) The dismissal was without prejudice, and Plaintiffs were granted leave to file an amended pleading. (*Id.* at 18) The court offered the following words of caution in dismissing the pleading without prejudice:

> Counsel are advised that as this case proceeds, they are going to have to be compliant with this Court's rules and procedures, as well as more helpful to the Court. The burden is on Plaintiffs, initially, to submit a complaint that is of comprehensible length and organization, specifically identifying which claims are alleged by which Plaintiffs against which Defendants (and if Defendants' specific identities are unknown, some allegation as to the basis on which Plaintiffs are contending any specified Defendant was involved). If Plaintiffs fail to correct these and other deficiencies identified in this Opinion, their Second Amended Complaint will be dismissed with prejudice.

(*Id.* at 19)

Plaintiffs filed a second amended complaint on April 30, 2020 and amended the complaint again on May 5, 2020 (the "TAC")[5] to correct certain typographical errors. (D.I. 41; D.I. 43) The TAC asserted four causes of action[6] for cruel and unusual punishment under the Eighth Amendment, conspiracy, IIED, and supervisory liability for failure to train. (D.I. 43 at ¶¶ 104-26) On June 8, 2020, Plaintiffs filed a motion to amend the pleading "to add an inadvertently overlooked paragraph." (D.I. 51)

---

[5] Plaintiffs titled the pleading filed on May 5, 2020 an "Amended Second Amended Complaint." (D.I. 43) In its March 30, 2021 Memorandum Opinion, the court explained that "[a]lthough D.I. 43 is styled as a further amended 'Second Amended Complaint' (and the motion to dismiss briefing refers to it as such), it is nonetheless the third amended complaint in this action." (D.I. 67 at 4 n.5)

[6] The TAC omits the previous Count III for improper cross-gender strip searches but does not adjust the numbering of the subsequent counts. As such, the TAC identifies the claim for failure to train as Count V even though there are only four counts.

On March 30, 2021, the court dismissed the TAC with prejudice for failure to correct the deficiencies identified in the March 16, 2020 Memorandum Opinion and denied the motion to amend. (D.I. 67) Rejecting the TAC's "broad allegations of harm suffered by scores of undifferentiated inmates caused by dozens of undifferentiated Defendants[,]" the court determined that the TAC was "no less a 'shotgun pleading' than the First." (*Id.* at 9-10) The court stressed that it had "invested significant time and resources into parsing the language of the various complaints, which advance a web of confusing allegations that still do not make clear who allegedly did what and to whom at what time." (D.I. 67 at 7)

On appeal, the Third Circuit affirmed the district court's dismissal with prejudice of Plaintiffs' claims for supervisory liability and conspiracy and concluded that the district court did not abuse its discretion in denying Plaintiffs' motion to amend the pleading. (D.I. 76-2 at 8-10) However, the Third Circuit reversed the district court's dismissal of Plaintiffs' Eighth Amendment and state law claims for intentional infliction of emotional distress ("IIED") under Rule 8, and the case was remanded for further consideration of those claims. (*Id.* at 5, 7 n.5) The Third Circuit left open the possibility that there may be other bases for dismissal beyond Rule 8:

> We express no opinion as to whether there are appropriate bases for dismissal for some of the plaintiffs' remaining claims, including under Rule 12(b)(6) or on the basis of qualified immunity. In addition, while we hold that dismissal of all claims under Rule 8 was not warranted, challenges under Rule 8 might be employed as to certain specific defendants. The District Court may decide in the first instance whether further amendment of the complaint is appropriate or whether other avenues exist to focus the issues such as voluntary dismissal of certain parties, limited discovery, or party stipulations regarding further motions directed at the pleadings.

(*Id.* at 10)

The Third Circuit also acknowledged that, despite being given multiple opportunities to amend, Plaintiffs' pleading "still contained a significant amount of extraneous material, difficult to follow allegations, and allegations regarding individuals who are not parties to this litigation." (*Id.* at 5-6) In recognition of these ongoing challenges, the Third Circuit "t[ook] th[e] opportunity to provide examples of potentially viable claims" for excessive force and conditions of confinement, contrasting claims "describing actions taken by individual defendants that harmed individual plaintiffs" with allegations listing "many defendants that engaged in generalized conduct . . . or many plaintiffs who suffered injuries that were inflicted by unidentified CERT members or JTVCC employees." (*Id.* at 6-7)

After the case was remanded in April of 2022, the parties engaged in discovery. In accordance with the Third Circuit's suggestion, the court entered an order granting Plaintiffs leave to file an amended pleading on February 25, 2025, and Plaintiffs filed the 4AC on May 1, 2025. (D.I. 107; D.I. 109) The 4AC represents Plaintiffs' sixth attempt to state a claim upon which relief may be granted. (D.I. 1-1; D.I. 6; D.I. 41; D.I. 43; D.I. 51-3; D.I. 109) Unlike every preceding iteration of the pleading, which identified numbered counts asserting specific causes of action, (D.I. 1-1; D.I. 6; D.I. 41; D.I. 43; D.I. 51-3), the 4AC does not number or label any specific causes of action, (D.I. 109).[7] Other changes in the 4AC include the addition of 121 defendants, for a total of 173 defendants, and the attachment of an "Exhibit A," which includes additional factual allegations about the claims of 98 inmates. (D.I. 109)

On May 23, 2025, Plaintiffs filed an "amended document" purporting to make minor changes and corrections to the 4AC (the "Proposed 5AC"). (D.I. 113) Plaintiffs did not seek

[7] Defendants represent that Plaintiffs' counsel was contacted to verify whether a draft or incomplete document was filed by mistake, and Plaintiffs' counsel allegedly "confirmed that the omission of any counts whatsoever was by design." (D.I. 120 at 16 n.9)

leave of court to file the Proposed 5AC, as required by Rule 15(a)(2). Fed. R. Civ. P. 15(a)(2). The Proposed 5AC adds headings to distinguish between "Individual Defendant Liability" and "Supervisor Liability" in the portion of the pleading that would normally include numbered counts setting forth specific causes of action. (*Id.* at ¶¶ 74-80) The Proposed 5AC also removes any reference to battery and IIED. The full scope of the changes made in the Proposed 5AC is otherwise unclear due to Plaintiffs' failure to comply with District of Delaware Local Rule 15.1, which requires a party filing an amended pleading to file both a clean version and a blackline "indicat[ing] in what respect it differs from the pleading which it amends, by bracketing or striking through materials to be deleted and underlining materials to be added." D. Del. LR 15.1. Because Plaintiffs did not file a clean version of the 4AC, and the Proposed 5AC was also filed as a blackline, the court cannot identify all the differences between the 4AC and the Proposed 5AC in a blackline-to-blackline comparison.

Plaintiffs represent that the 4AC requires yet another amendment following Defendants' July 11, 2025 production of an additional CERT roster from April 12, 2017. (D.I. 122 at 7-8) Plaintiffs intend to name 34 additional defendants to the pleading based on the contents of the CERT roster. (*Id.* at 8) Plaintiff's proposal would necessitate the filing of a further amended complaint beyond the Proposed 5AC, in contravention of the Third Circuit's admonition to narrow the parties and claims and focus the issues.

On October 16, 2026, the court ordered the parties to file supplemental submissions addressing the absence of numbered counts from the 4AC in the context of Rule 10(b), which states that, "[i]f doing so would promote clarity, each claim . . . must be stated in a separate count[.]" (D.I. 140); Fed. R. Civ. P. 10(b). Plaintiffs contend that the inclusion of counts was not necessary to promote clarity in the 4AC because "[e]ach defendant can easily scan the 4AC

for the paragraphs in which his/her name appears and admit or deny the allegations against him or her." (D.I. 141 at 1) Defendants respond with examples of how the 4AC and the Proposed 5AC lack clarity, supporting dismissal under Rule 10(b). (D.I. 142 at 2)

## II. DISCUSSION

As an initial matter, the 4AC is the operative pleading in this case. Rule 15(a)(1) provides that "[a] party may amend its pleading once as a matter of course" within 21 days of the filing of a responsive pleading, after which the opposing party's consent or leave of court is required. Fed. R. Civ. P. 15(a)(1); *U.S. ex rel. Atkinson v. PA Shipbuilding Co.*, 473 F.3d 506, 524 (3d Cir. 2007) ("The rejection of an unapproved amended complaint is not an abuse of discretion."); *see Gibbs-Squires v. Cosby*, 2017 WL 5515916, at *5 n.11 (E.D. Pa. Mar. 7, 2017) ("Because [Plaintiff] already filed an amended complaint, any subsequent amendment required leave of court or the written consent of Defendants."). Plaintiffs did not seek leave of court to file the Proposed 5AC, and the form of Plaintiffs' filing fails to conform to District of Delaware Local Rule 15.1(a), which requires the attachment of "[a] form of the amended pleading which shall indicate in what respect it differs from the pleading which it amends[.]" D. Del. LR 15.1(a). A blackline-to-blackline review of the 4AC and the Proposed 5AC would require the court to engage in a painstaking, paragraph-by-paragraph comparison of each pleading to identify changes, imposing the burden on the court instead of Plaintiffs in contravention of Local Rule 15.1. Furthermore, the court does not construe the representations in Plaintiffs' answering brief to constitute a formal request for leave to file an amended pleading. *See* D. Del. LR 7.1.2(a) ("[A]ll requests for relief shall be presented to the Court by motion.").

The court next turns to the sufficiency of the operative pleading and recommends that the 4AC be dismissed with prejudice. The 4AC introduces a new deficiency to the pleading by

eliminating identifiable counts in violation of Federal Rule of Civil Procedure 10(b),[8] which states that, "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count[.]" Fed. R. Civ. P. 10(b); *see Coleman v. Camacho*, 2012 WL 5986455, at *3 (D.N.J. Nov. 27, 2012) (holding that the court has discretion to dismiss a complaint for failure to comply with Rule 10(b)). "The purpose of the requirement of separate counts is to clarify the issues and simplify the trial[.]" *Williamson v. Columbia Gas & Elec. Corp.*, 186 F.2d 464, 469 (3d Cir. 1951). For example, when a complaint is brought against many defendants, separate counts apprise individual defendants of the claims brought against them. *See A.B. for C.D. v. Vineland Bd. of Educ.*, 2018 WL 3141831, at *6 (D.N.J. June 27, 2018).

Plaintiffs' failure to delineate any cause of action in the 4AC "leav[es] Defendants and the Court unable to ascertain what (unlisted and undefined) counts apply" to each party. (D.I. 120 at 14) For example, the 4AC includes key words suggesting that Plaintiffs intend to assert claims for conspiracy and supervisory liability.[9] (D.I. 109 at ¶¶ 65, 67-68, 72) However, these claims were dismissed with prejudice in the court's March 26, 2021 Memorandum Opinion, and the Third Circuit affirmed the dismissal of those claims on appeal. (D.I. 67 at 10-12; D.I. 76-2 at 7-9) Because Plaintiffs may not resurrect claims that were dismissed with prejudice, the

---

[8] The court provided the parties with an opportunity to state their respective positions regarding dismissal under Rule 10(b). (D.I. 140) Regardless, "the court may dismiss *sua sponte* a complaint that runs afoul of Rule 10(b)." *Williams v. Chicago Transit Authority*, 2017 WL 4467456, at *5 (N.D. Ill. Sept. 30, 2017) (citing *Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 841 (9th Cir. 2000)); *see also Magluta v. Samples*, 256 F.3d 1282, 1284 & n.3 (11th Cir. 2001).

[9] Even if the court were to consider the substance of the "amended document" at D.I. 113, the result would remain the same. The proposed amendment adds headings for "Individual Liability" and "Supervisor Liability." (D.I. 113 at ¶¶ 74-80) "Individual Liability" extends to "[a]ll named defendants" without further distinction of claims or parties. (*Id.* at ¶¶ 74-76) The heading for "Supervisor Liability" also fails to provide greater clarity, as Plaintiffs' claims for supervisory liability were dismissed with prejudice. (D.I. 67 at 10-12)

averments alluding to supervisory liability and conspiracy in the 4AC only obfuscate the existence of potentially viable claims. *See Papera v. Pennsylvania Quarried Bluestone Co.*, 948 F.3d 607, 611 (3d Cir. 2020); *Damiani v. Del. State Police Troop 2*, 2013 WL 3724871, at *3 (D. Del. July 12, 2013) (dismissing claims in an amended complaint because they had already been dismissed with prejudice); *Mimms v. U.N.I.C.O.R.*, 2010 WL 892200, at *7 (D.N.J. Mar. 8, 2010), *aff'd*, 386 F. App'x 32 (3d Cir. 2010) ("Plaintiff's systemic repeat of these already-dismissed-with-prejudice claims disregards the Court's prior ruling. These claims have been dismissed with prejudice and cannot be revived by restating them a third time.").

Plaintiffs' supplemental submission magnifies this lack of clarity. Plaintiffs insist that the 4AC alleges claims for assault, battery, IIED, and violations of 42 U.S.C. § 1983 and the Eighth Amendment "against all defendants." (D.I. 141 at 1) But among the Defendants identified in the 4AC are "supervising officers," such as Vanes, Parker, Brennan, and Kromka, who appear to be accused only of failing to supervise, train, or discipline—claims that were previously dismissed with prejudice.[10] (D.I. 109 at ¶¶ 8-9, 48, 64-65, 67; D.I. 67 at 10-11) Other Defendants, such as Former Commissioner Robert Coupe, Commissioner Perry Phelps, Warden Dana Metzger, Warden David Pierce, Deputy Warden James Scarborough, and Warden Robert L. May, Jr., are named only in the case caption, with no allegations describing their conduct in the body of the 4AC. These non-exhaustive examples illustrate the challenges faced by the court in determining which causes of action are asserted against which Defendants, and Plaintiffs' deletion of separate counts from the 4AC only exacerbates those challenges.[11]

---

[10] For example, the 4AC alleges that "all DOC supervisory employees, including those who are defendants in this action, were at a minimum provided with copies of the Final Report. However, they failed to discipline the [corrections officers] under their supervision or make plain that such abuse, provocation, and harassment of inmates must cease." (D.I. 109 at ¶ 48)

[11] In their supplemental submission, Plaintiffs cite *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014), to support their position that a civil rights complaint should not be dismissed over a

The Third Circuit indicated that Plaintiffs may have "potentially viable claims" for IIED and/or Eighth Amendment excessive force and conditions of confinement. (D.I. 76-2 at 6-7 & n.5) However, the omission of labeled counts from the 4AC clouds Plaintiffs' attempt to reassert claims for Eighth Amendment violations and/or IIED. Paragraph 74 of the 4AC alleges that

> [a]ll defendants were deliberately indifferent to the plight of the plaintiffs and class members and violated their civil rights pursuant to 42 U.S.C. § 1983 and his [*sic*] 8th Amendment right to be free of cruel and unusual punishment.
> 1. And their intentional acts constituted:
>    a. Assault;
>    b. Battery;
>    c. Intentional infliction of emotional distress; and [*sic*][.]

(D.I. 109 at ¶ 74) This single paragraph appears to assert at least three state law causes of action and one or more federal causes of action against "[a]ll defendants," in contravention of Rule 10(b)'s requirement to state claims or defenses "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). In their supplemental submission, Plaintiffs state only that all three of their state law claims for assault, battery, and IIED should have been listed in one separate paragraph. (D.I. 141 at 1) Plaintiffs' omission of identifiable counts from the 4AC represents a regression from pleading a viable cause of action, nearly eight years after the start of the litigation.

Another change to the 4AC, the inclusion of an attorney-drafted "Exhibit A" reciting additional factual allegations about 98 inmates, fares no better. Rule 10(c) contemplates the incorporation by reference of a "written instrument" attached as an exhibit to a pleading, but the Third Circuit has clarified that written instruments "consist largely of documentary evidence,

---

pleading technicality. (D.I. 141 at 2) In *Johnson*, the Supreme Court held that the plaintiffs' failure to expressly invoke 42 U.S.C. § 1983 did not warrant dismissal of the complaint because the factual allegations were "stated simply, concisely, and directly" to put the defendant on notice of the claims against it. *Johnson*, 135 U.S. at 347. Here, in contrast, the allegations in the 4AC are not simple, concise, or direct, despite repeated guidance from this court and the Third Circuit.

specifically, contracts, notes," and other writings, as opposed to "[l]engthy exhibits containing . . . evidentiary matter[.]" Fed. R. Civ. P. 10(c); *Rose v. Bartle*, 871 F.2d 331, 339 n.3 (3d Cir. 1989); *see also Kenney v. Volz*, 2018 WL 11476232, at *3 (M.D. Pa. Oct. 23, 2018) (holding that exhibits attached to the complaint "to allege facts and law for us to consider . . . do not conform to what is regarded as an appropriate pleading under the Federal Rules of Civil Procedure, and specifically violate Rule 10(c)"). Diverting factual allegations to an exhibit attached to the pleading is not an appropriate means of satisfying the Rule 8 requirement of pleading "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Consequently, the court may not appropriately consider the averments in Exhibit A to the 4AC.

The 4AC also does little to remedy the deficiencies identified by the district court and the Third Circuit. At least one named Plaintiff, Michael A. Brown, is listed in the caption but is not mentioned in the pleaded allegations. (D.I. 109 at 1) The experiences of other inmates, including Leroy McCoy, Kenneth Adams, David Miller, and Shurod Johnson, are described in the body of the 4AC even though they are not named as Plaintiffs. (*Id.* at ¶¶ 14, 25-26, 29) These deficiencies persist despite the Third Circuit's admonition against including "allegations regarding individuals who are not parties to this litigation." (D.I. 76-2 at 6) Plaintiffs also omitted from the 4AC at least one factual allegation cited by the Third Circuit as an example of a "potentially viable claim[ ]" under Rule 8.[12] Moreover, the 4AC persists in using "shotgun

[12] Specifically, the TAC alleges that "James G. Wells was badly beaten and suffered head injuries on February 2, 2017 but received very little medical care. . . . James believes CERT members included E. Lehman, C. Kearney, Dale[ ] Raines, Coverdale, Heritage, W. Wells, Michael Mitchell, Todd Drace." (D.I. 43 at ¶ 35; *see also* D.I. 76-2 at 6) Plaintiffs omitted this paragraph from the 4AC, which mentions James G. Wells only once in a paragraph alleging that 63 named Plaintiffs were "abused . . . by Vanes' team," comprised of more than 90 Defendants. (D.I. 109 at ¶¶ 7, 15)

pleading" techniques to assert generalized claims of assault by dozens of Defendants against multiple Plaintiffs.[13] (*See, e.g.*, D.I. 109 at ¶¶ 27-29)

The court's recommendation is consistent with the Third Circuit's decision. In assessing the TAC, which included identifiable causes of action, the Third Circuit held that some averments passed muster under Rule 8 while "express[ing] no opinion as to whether there are appropriate bases for dismissal" for the remanded claims on other grounds and acknowledging that "challenges under Rule 8 might be employed as to certain specific defendants." (D.I. 76-2 at 10) Not only does the 4AC fail to incorporate the Third Circuit's guidance "to focus the issues," it also introduces new deficiencies under Rule 10 that were not present in the TAC and were not considered by the Third Circuit. (*Id.*) The Third Circuit has held that a plaintiff's "inexplicable failure to plead in conformity with the rules, despite four chances to amend, supports the denial of further leave to amend" and dismissal of a pleading with prejudice. *Hoffenberg v. Bumb*, 446 F. App'x 394, 399 (3d Cir. 2011); *see also Jones v. Camden City Bd. of Educ.*, 499 F. App'x 127, 129 (3d Cir. 2012) (affirming dismissal with prejudice where the plaintiff "made no attempt to remedy the defects in his complaint, despite notice and his familiarity with the pleading requirements"). After eight years of litigation and more than six pleading attempts by Plaintiffs, I recommend that the court dismiss the 4AC with prejudice for failure to comply with Rule 10. *See Meza-Role v. Partyka*, 2012 WL 2470053, at *2 (D.N.J. June 25, 2012) ("A district court is not required to grant leave to amend a complaint if it becomes clear that the plaintiff cannot, or will not, properly cure the complaint.").

---

[13] For example, paragraph 29 of the 4AC lists 38 Defendants alleged to have "physically and verbally assaulted" more than 8 Plaintiffs. (D.I. 109 at ¶ 29) Although the paragraph provides more detailed allegations about the nature of the assault on Plaintiff Baine, it is not plausible to infer that all 38 named Defendants handcuffed Baine and shoved his forehead into a wall, and the 4AC offers no more specificity regarding this averment.

The court next addresses Exhibit 1 to Defendants' opening brief in support of the motion to dismiss, which the court construes as an alternative argument that only certain allegations in the 4AC may survive. (D.I. 120, Ex. 1) On a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint[,] and matters of public record." *Ryanair DAC v. Booking Holdings Inc.*, 636 F. Supp. 3d 490, 497 (D. Del. 2022) (quoting *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The court may also consider "an undisputedly authentic document . . . if the plaintiff's claims are based on the document." *Id.* Although Defendants' Exhibit 1 purports to describe allegations in the 4AC, it is an attorney-drafted document created on behalf of the parties opposing the 4AC. As such, it is extraneous material, and the court may not consider it on a motion to dismiss.

Even if the court were to consider Defendants' Exhibit 1, it would not alter the court's analysis. Exhibit 1 purports to recite factual allegations taken from the 4AC, but it includes no argument addressing how those allegations either satisfy or fail to satisfy the pleading standards articulated in Rules 8, 10, and 12(b)(6). The list also incorrectly suggests that Plaintiffs brought claims against "John Doe" defendants. (D.I. 120, Ex. 1) Although the Third Circuit stated that "John Doe" defendants may be named when the identities of relevant actors remain unknown, Plaintiffs did not name John Doe defendants. (D.I. 76-2 at 6 n.4) Instead, the 4AC either lists dozens of Defendants by name for undifferentiated conduct or groups them by CERT teams comprised of dozens of Defendants.[14] (*See, e.g.*, D.I. 109 at ¶¶ 7-18, 27-29) The Third Circuit's decision expressly indicated that allegations in the TAC "list[ing] many defendants that engaged in generalized conduct . . . or many plaintiffs who suffered injuries that were inflicted by

---

[14] For example, the 4AC refers to "Vanes' team," which is defined in the 4AC to include 91 defendants. (D.I. 109 at ¶¶ 7-18)

unidentified CERT members or JTVCC employees" were "not sufficient to comply with Rule 8." (D.I. 76-2 at 10)

To the extent that certain allegations in Defendants' Exhibit 1 identify a particular Defendant by name in reference to specific conduct, the 4AC stops short of identifying which claims are supported by those factual allegations.[15] (*See, e.g.*, D.I. 120, Ex. 1 at ¶¶ 17-18, 20-21, 23, 26-27) Plaintiffs argue that they are not required to perfectly state their legal theories in the

---

[15] The Third Circuit indicated that the TAC's pleaded allegations regarding plaintiff Antwan Douglas may state a "potentially viable claim." (D.I. 76-2 at 6-7) Defendants' Exhibit 1 states "Douglas was allegedly beaten, tased, and stomped by John Does." (D.I. 120-1 at ¶ 10) The actual allegation regarding Douglas in the 4AC does not comply with Rule 8(a)'s requirement to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief" or Rule 10(b)'s directive to limit each numbered paragraph to a single set of circumstances:

> On February 14, 2017, on the orders of and at the direction of new defendant Kromka, original defendants Arabia, Justin Atherholt, Barone, Beckles, Burton, Connor, Coverdale, Drace, Jack Evans, Faulkner, Figueroa, Foraker, Forkum, Frederick, Gill, Green, Griffith, Hawkins, Hazzard, Vincent May, Milligan, Payton, Rains, Runyon, Savage, Tyson, Vanes, West, and Young, as well as new defendants Burris, Alan Challis, Eric Evans, Heritage, David Johnson, Deon Kell, Kuhner, Harry Legates, Lehman, Morales-Rodriguez, Myrick, Kirk Neal, Pontano, Poorman, Turner, Uloa, and Michael Verucci, all in full riot gear, burst into MHU Building yelling threats, obscenities, racial epithets, and homophobic slurs. They sprayed pepper spray into each cell, sometimes under doors and without warnings, and then assaulted the inmates even though the latter were doing nothing wrong or aggressive. They yelled, "It's payback time!" and "You thought this was over?" They beat plaintiff Caldwell so badly they fractured his femur. They strip-searched plaintiffs Boyer, Cannon, Cruz-Webster, Dillard, Foreman, Goddard, Jackson, Teagle, Wheeler, Wood, and other inmates. Defendants Connor, Coverdale, and Runyon beat, punched, kicked, tased, shocked, stomped on, and kneed plaintiffs Caldwell, Cruz-Webster, Douglas, Jackson, Wheeler, Wood, and at least one other handcuffed inmate severely. They forced many plaintiffs out of the building with their heads down and cuffed hands at or above shoulder level, screaming, "Look at the f***ing ground!" and "Don't f***ing look at us!" They held plaintiff Wheeler's face against the floor and then a table and ordered other inmates to kneel with their legs crossed and hands cuffed behind their backs for hours. When the plaintiffs were finally allowed to return to their cells, they found their personal property disheveled, with myriad items broken or missing.

(D.I. 109 at ¶ 28)

pleading. (D.I. 141 at 2) A party represented by counsel is nonetheless expected to "identify[ ] which parties are being sued under which count[s]" and "clearly separate distinct legal theories," particularly when given multiple opportunities to amend. *Bracken v. Cnty. of Allegheny*, 2017 WL 5593451, at *5 (W.D. Pa. Nov. 21, 2017), *aff'd*, 760 F. App'x 81 (3d Cir. 2019). Plaintiffs' intentional removal of counts from the 4AC appears to reflect Plaintiffs' hesitance to commit to specific causes of action and/or their efforts to disguise the repleading of claims that were dismissed with prejudice. The result is disorganized collections of assorted factual allegations untethered to any clearly articulated legal theory or claim. "[T]he rule that courts should liberally construe a *pro se* plaintiff's complaint does not apply" to a party represented by counsel, and the court has no obligation to construct causes of action on Plaintiffs' counsel's behalf. *Szemple v. Corr. Med. Servs., Inc.*, 2012 WL 161798, at *5 n.8 (D.N.J. Jan. 19, 2022) (internal quotation marks and citations omitted).

In sum, the 4AC: (1) adds deficiencies that were not present in prior iterations of the pleading, (2) fails to fully remedy deficiencies previously identified by the district court and the Third Circuit, and (3) appears to reassert causes of action that were dismissed with prejudice. Under these circumstances, the court recommends that Plaintiffs have exhausted ample opportunities to correct their pleading deficiencies to no avail, therefore, dismissal with prejudice is warranted. The court reiterates the reasoning offered in the Memorandum Opinion dated March 30, 2021:

> Plaintiffs have now filed [six] complaints, several following Defendants' and the Court's [and the Third Circuit's] identification of flaws in earlier versions. Yet they are no closer to stating a claim on which relief may be granted, in compliance with pleading standards, than they were previously. Despite the preference of courts to adjudicate claims on their merits—and, hopefully, reach the truth of what happened, redress proven wrongs, and do justice—the Court cannot do so when Plaintiffs fail to do what is required to give Defendants notice

> and begin to press their case. Permitting another amendment would be unfairly prejudicial to [ ] Defendants.

(D.I. 67 at 11-12)

## III. CONCLUSION

For the reasons discussed above, I recommend that the court GRANT Defendants' motion to dismiss, DISMISS the 4AC with prejudice, and CLOSE the case. (D.I. 119; D.I. 121) I further recommend that the court TERMINATE as moot the letter motion of Plaintiff Regent J. Goddard requesting the appointment of new counsel. (D.I. 127)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: November 5, 2026

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE